UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------x      15  CV  2561

PARTITA PARTNERS LLC,
DENISE JO LEVY, A PARTNER OTHER
THAN THE TAX MATTERS PARTNER

                           Plaintiff,

                                                    COPY RECEIVED
                                                    APR - 2 2015
                                      JUDGE CASTEL
                                                    US ATTORNEY'S OFFICE

                                      15 CV

                                                    COMPLAINT
                                                    RECEIVED
                                                    APR 02 2015
     v.
                                                    U.S.D.C. S.D. N.Y.
UNITED STATES OF AMERICA,

                           Defendant.

------------------------------------x


### *Preliminary Statement*

1.    In order to encourage the preservation of significant historic structures, Congress has
allowed the value of a perpetual easement on the façade of, and of unused development
rights with respect to, such structure, that are donated to a qualified charitable
organization (such as the Trust for Architectural Easements) to be claimed as a charitable
contribution tax deduction.  The Internal Revenue Code (the "Code") allows
this deduction because the granting of the easement and the loss of development rights
impose onerous restrictions on the operation of the building that adversely affect its fair
market value, particularly in the context of commercial and other income-producing real
property.  The amount of the deduction to be allowed for the grant of an easement on the
façade of, and of certain unused development rights with respect to, a New York City
property is at issue in this case.  The Internal Revenue Service has taken the position that
no deduction may be claimed, despite the statute's explicit allowance of a deduction, and
despite the owner's having presented a qualified appraisal that shows a value for the
easement in excess of $4,186,000.

2.    During 2008, in furtherance of Congress's conservation purpose, Partita Partners LLC
(the "Partnership") contributed an easement to preserve in perpetuity the façade, and to
limit further development, of 964-966 Lexington Avenue, New York, New York (the
"Property"), a historic property located on Manhattan's Upper East Side.

3.    The Property was constructed in 1871–82 in the Italianate style.  The Property is located
within the "Upper East Side Historic District," which was designated by the New York

City Landmarks Preservation Commission in 1981.  The National Park Service determined that the Property was a "certified historic structure" within the historic district on August 26, 2008.

4.     The Partnership scrupulously complied with the requirements of the Code and the Regulations thereunder for obtaining the congressionally mandated tax benefits for its contribution, and, on its return for 2008 (Form 1065), the Partnership claimed a charitable contribution deduction of $4,236,000 ($4,186,000 for the donation of the conservation easement and $50,000 in cash).

5.     As set forth in the Deed (defined below), the restrictions imposed by the easement contributed by the Partnership require, *inter alia*, the Partnership to seek permission from the donee at any time that the Partnership wishes to undertake "[a]ny alteration, construction or remodeling of the existing improvements on the Property," undertake "[a]ny exterior extension of existing improvements on the Property or the erection of any new or additional improvements on the Property or in the open space above or surrounding the existing improvements," or make changes to the façade of the Property, including in connection with the periodic turnover of retail tenants on the ground floor of the building or in connection with making internal improvements that may require even minor adjustments to the façade.  These restrictions impose significant limitations on the Partnership's flexibility (and on the flexibility of any potential purchaser of the Property) in dealing with its real property and result in a significant decrease in the Property fair market value.

6.     Nevertheless, contrary to the Code, the Internal Revenue Service has not only denied any deduction for the value of the contribution, but it has also sought to impose a substantial penalty by the reason of the Partnership's having claimed the deduction.

7.     This case involves Plaintiff's challenge to the Internal Revenue Service's proposed total disallowance of the deduction claimed by the Partnership for the contribution made by the Partnership during 2008 to a qualified charity.

### *Jurisdiction, Venue, and Demand for Jury Trial*

8.     This action for judicial review of a final partnership administrative adjustment ("FPAA") arises under federal statutes, 26 U.S.C. § 6226(b)(1) and 28 U.S.C. § 1346(e), as hereinafter more fully appears.

9.     This Complaint constitutes a petition for a readjustment of the partnership items of the Partnership for its tax year ended December 31, 2008.

10.     The Partnership's principal place of business is located in New York, New York.

11.     On or about April 7, 2009, the Partnership filed its U.S. Return of Partnership Income (Form 1065) for 2008 electronically.

12.    On November 12, 2014, the Internal Revenue Service mailed a Notice of Final Partnership Administrative Adjustment for 2008 (the "FPAA") dated November 10, 2014, to the tax matters partner ("TMP") of the Partnership.  A copy of the FPAA is attached as Exhibit A.

13.    Plaintiff Denise Jo Levy is an individual residing at 135 Central Park West, Apt. 2S, New York, New York 10023.

14.    At all times during 2008, Plaintiff was a partner of the Partnership.

15.    Plaintiff is a "notice partner" in the Partnership within the meaning of Code §§ 6226(b)(1) and 6231(a)(8).

16.    Plaintiff is not the TMP of the Partnership.

17.    The TMP of the Partnership did not file a Petition or Complaint for readjustment of the partnership items of the Partnership for 2008 with any court within the period specified in Code § 6226(a).

18.    In accordance with Code § 6226(e)(1), on April 2, 2015, an amount representing what would be the increase in the tax liability of the Plaintiff, if the treatment of the partnership items of the Partnership on Plaintiff's returns were made consistent with the treatment of such partnership items on the Partnership's return, as adjusted by the FPAA, was deposited with the Internal Revenue Service.  This deposit was made by sending via Federal Express two checks totaling an amount equal to $26,000 (one check for in the amount of $12,000 for tax year 2008; one check in the amount of $14,000 for tax year 2009) to Internal Revenue Service, Appeals Office, 400 West Bay Street, Suite 252, Stop A, Jacksonville, FL 32202.  Federal Express confirmed delivery on April 2, 2015.

19.    Plaintiff has an interest in the outcome of this proceeding within the meaning of Code § 6226(d).

20.    Defendant is the United States of America.

21.    Venue is proper in this district pursuant to Code §§ 6226(b)(1) and 6226(a)(2), because Defendant is the United States of America and because the Partnership's principal place of business is within the Southern District of New York.

### *Assertions of the Commissioner of Internal Revenue in the FPAA*

22.    The FPAA proposes to disallow a charitable contribution deduction in the amount of $4,236,000 claimed on the Partnership's return for 2008 (Form 1065).

23.    The FPAA also proposes to impose accuracy-related penalties on the partners in the Partnership.

*Grounds for Readjustment*

24.  Since 2003, the Partnership has owned the Property, a mixed-use retail and residential property located in Manhattan, located at 964-966 Lexington Avenue, between East 70th and East 71st Streets.

25.  The Property is four stories and contains eight residential and four retail units.

26.  The Partnership by deed dated August 20, 2008, and recorded on or about October 28, 2008, granted a perpetual easement on the façade of, and certain unused development rights with respect to, the Property to the Trust for Architectural Easements, exclusively for conservation and historic preservation purposes (the "Contribution").

27.  The Contribution was made by means of a Historic Preservation Deed of Easement (the "Deed") dated August 20, 2008, a copy of which is attached hereto as Exhibit B.

28.  The Contribution was made by the Partnership of a restriction (granted in perpetuity) on the use which may be made of the Partnership's real property, which constitutes a "qualified real property interest" for purposes of Code § 170(h)(1)(A).

29.  The Deed includes a restriction which preserves the entire exterior of the building with respect to which the Contribution was made and prohibits any change in the exterior of the building that is inconsistent with the historical character of such exterior.

30.  The restrictions imposed by the easement contributed by the Partnership require, *inter alia*, the Partnership to seek advance permission from the donee at any time that the Partnership wishes to make changes to the façade of the Property, including in connection with the periodic turnover of retail tenants on the ground floor of the building or in connection with making internal improvements that may require even minor adjustments to the façade.

31.  With the exception of limited rights that the Partnership retained, the Deed restricts any further development of the Property, without regard to whether such development affects the façade of the Property.

32.  These restrictions and the other terms of the Deed (which are incorporated herein by this reference) impose significant limitations on the Partnership's flexibility (and on the flexibility of any potential purchaser of the Property) in dealing with its real property and result in a significant decrease in its fair market value.

33.  The Code contains provisions (particularly §§ 170(f)(3)(B)(iii) and 170(h)) that enable taxpayers to claim charitable contribution deductions for "qualified conservation contributions."  These provisions advance the Congressional purpose of encouraging the preservation of certified historic structures by the making of such contributions.

34.   The Partnership's grant of an easement to the Trust was a "qualified conservation contribution" that fully qualified for the benefits of such provisions.

35.   In order to report properly and not to overvalue the charitable contribution deduction to which it was entitled as a result of the grant of the easement, the Partnership obtained an appraisal of the easement.  The appraisal determined the value of the Property before the grant of the easement to be $8,100,000.

36.   On its 2008 return of partnership income (Form 1065), the Partnership claimed a charitable contribution deduction for the perpetual easement on the façade of, and certain unused development rights with respect to, the Property it had granted to the Trust, and the amount claimed as a deduction was based on the value of such easement determined by the qualified appraisal it obtained.

37.   At all relevant times, the Trust was a charitable organization recognized by the Internal Revenue Service as a tax exempt organization under Code § 501(c)(3).

38.   The Trust is a "qualified organization," as defined in Code § 170(h)(3).

39.   The Contribution was made exclusively for the preservation of a certified historic structure, which constitutes "conservation purposes" for purposes of Code § 170(h)(1)(C).

40.   The Partnership and the Trust entered into a written agreement certifying, under penalty of perjury, that the Trust is a "qualified organization" (as defined in Code § 170(h)(3)) with a purpose of historic preservation and has the resources to manage and enforce the granted restriction and a commitment to do so.

41.   The value of the Contribution on the date that it was made was not less than $4,236,000, the amount reported as such by the Partnership on its timely filed partnership return for 2008 (Form 1065).

42.   The Deed was delivered to the Trust on or about August 20, 2008.

43.   The Deed was recorded or filed in the Office of the City Register of the City of New York on October 28, 2008.

44.   The Partnership included with its return for 2008 (Form 1065) a description of the contributed property.

45.   The Partnership included with its return for 2008 (Form 1065) such other information as was required by Code § 170(f)(11)(B), (C), and (D), Treasury Regulation § 1.170A-13, and Internal Revenue Service Form 8283.

46.   The Partnership included with its return for 2008 (Form 1065) a copy of an appraisal obtained by the Partnership (the "Appraisal"), information on the contributed property, a declaration of the appraiser, and a donee acknowledgement.

47.   The Appraisal was a "qualified appraisal" made by a "qualified appraiser," as such terms are used in Code § 170(f)(11)(E)(i) and (ii) and Treasury Regulation § 1.170A-13.

48.   The Appraisal valued the Contribution (which did not include the $50,000 cash contribution) at $4,186,000 as of October 30, 2008.

49.   Prior to the filing of its return for 2008 (Form 1065), the Partnership made a further good faith investigation of the value of the contributed property.

50.   The principal adjustment made in the FPAA is a determination that the Partnership is not entitled to a charitable contribution deduction under Code § 170 with respect to the Contribution.

51.   Notwithstanding the Partnership's full compliance with the relevant provisions of the Internal Revenue Code, the Internal Revenue Service has proposed to disallow the Partnership's claimed charitable contribution deduction and thereby to deprive the Partnership and its partners of tax benefits provided under Code § 170(h) that Congress intended for them to have.

## *Inapplicability of Penalties*

52.   To the extent this Court determines that any underpayment of tax does exist by any direct or indirect partner in the Partnership, such underpayment was not attributable to negligence or disregard of any rules or regulations, a substantial understatement of income tax, or a substantial valuation misstatement (including, without limitation, a gross valuation misstatement), as such terms are used in Code § 6662.

53.   In the alternative, the value that would be needed to support the charitable contribution deductions actually claimed (for all taxable years in the aggregate) by one or more partners holding an interest in the Partnership was not more than 150% of the value of the Contribution (even if the amount of charitable contribution deductions shown on the Partnership's return was a greater amount).  A penalty for a substantial valuation misstatement can accordingly not be imposed on such partners, because no substantial valuation understatement penalty is due from any partner unless the aggregate amount of the charitable contribution deductions claimed by that partner exceeds by more than 50% that partner's aliquot share of the value of the Contribution determined by the Court.

54.   In the alternative, the value that would be needed to support the charitable contribution deductions actually claimed (for all taxable years in the aggregate) by one or more partners holding an interest in the Partnership was not more than 200% of the value of the Contribution (even if the amount of charitable contribution deductions shown on the Partnership's return was a greater amount).  A penalty for a gross valuation misstatement

can accordingly not be imposed on such partners, because no gross valuation understatement penalty is due from any partner unless the aggregate amount of the charitable contribution deductions claimed by that partner exceeds by more than 100% that partner's aliquot share of the value of the Contribution determined by the Court.

55.     In the alternative, to the extent this Court determines that any underpayment of tax was attributable to negligence or disregard of rules or regulations, a substantial understatement of income tax, or a substantial valuation misstatement, there was a reasonable cause for such underpayment, the Partnership (and each partner therein) acted in good faith with respect to such underpayment within the meaning of Code § 6664, and all other requirements of Code § 6664(c) were satisfied.

56.     In the alternative, to the extent this Court determines that any underpayment of tax is attributable to a substantial understatement of income tax (and either there is not a reasonable cause for such underpayment or the Partnership (and the partners therein) did not act in good faith with respect to such underpayment), the amount of the understatement should be reduced to zero by reason of Code § 6662(d)(2)(B).

57.     In the alternative, to the extent this Court determines that any underpayment of tax is attributable to a substantial valuation overstatement (and either there is not a reasonable cause for such underpayment or the Partnership (and the partners therein) did not act in good faith with respect to such underpayment), the amount of the overstatement should be reduced to zero by reason of Code § 6664(c)(3).

58.     Pursuant to Code § 7491(c), Defendant has the burden of production in this proceeding with respect to the liability of any individual (including a direct or indirect partner in the Partnership) for any penalty, addition to tax, or additional amount imposed by the Code, including, without limitation, the burden of production with respect to the Internal Revenue Service's compliance with Code § 6751(b).

### *Conclusion and Prayer for Relief*

59.     All adjustments proposed in the FPAA are erroneous.

        WHEREFORE, Plaintiff demand judgment in their favor and against the United States:

        (1) that there is no adjustment to any item of income, gain, loss, deduction, or credit of the Partnership for the year ended December 31, 2008, and that the Court in all other respects determine with respect to those issues that are properly before this Court in this proceeding that the proposed adjustments (including penalties) in the FPAA are erroneous and/or arbitrary and capricious in fact and in law and that none of the adjustments asserted by Respondent in the FPAA should be made (but, if such adjustments are to be made to any extent, that appropriate upward adjustments to basis should be made); and

        (2) for Plaintiff's costs and attorney's fees (to the extent allowable by law); and

(3) for such other and further relief as this Court deems appropriate.

Dated:  New York, New York
       April 2, 2015

Of Counsel:

Roberts & Holland, LLP
825 Eighth Avenue, 37th Floor
New York, NY  10019
(212) 903-8700

Respectfully submitted,

*Richard A. Levine*
Richard A. Levine (RL 4451)
Attorney for Plaintiff
825 Eighth Avenue, 37th Floor
New York, NY  10019
(212) 903-8729

/s/ Elliot Pisem
Elliot Pisem (EP 2785)
Attorney for Plaintiff
825 Eighth Avenue, 37th Floor
New York, NY  10019
(212) 903-8777

**Internal Revenue Service**
IRS - Appeals Office
400 West Bay Street, Suite 252
STOP A
Jacksonville, FL 32202

**Department of the Treasury**

**Person to Contact:**
  Vivian C. Watson
  Employee ID Number: 0228952
  Tel:   904-665-0976
  Fax:  904-665-1835
**Refer Reply to:**
  AP:FE:JAX:VCW
**In Re:**
  Partita Partners LLC
**SSN/EIN Number:**
  90-0066244
**Tax Period(s) Ended:**
  December 31, 2008

Date:     NOV 1 0 2014

RICHARD A. LEVINE
c/o Roberts & Holland
825 EIGHT AVENUE
37th Floor
NEW YORK NY  10019

Dear Mr. Levine:

We are sending you the enclosed material under the provisions of your power of attorney or other authorization we have on file.  For your convenience, we have listed the name of the taxpayer to whom this material relates in the heading above.

If you have any questions, please contact the person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

Sincerely,

Mark C Pettigrew
Supervisory Appeals Officer

Enclosures:
  Letter 1830
  Form 870-PT

**Internal Revenue Service**
IRS - Appeals Office
400 West Bay Street, Suite 252
STOP A
Jacksonville, FL 32202

**Department of the Treasury**

**Person to Contact:**
 Vivian C. Watson
 Employee ID Number: 0228952
 Tel:   904-665-0976
 Fax:  904-665-1835
**Refer Reply to:**
 AP:FE:JAX:VCW
**Name of Partnership:**
 Partita Partners LLC
**Partnership Identifying Number:**
 90-0066244
**Date FPAA Mailed to Tax Matters Partner:**

Date:   NOV 1 0 2014

JUDSON PROPERTIES LLC
TAX MATTERS PARTNER
PARTITA PARTNERS LLC
145 EAST 57TH STREET
NEW YORK NY 10022-2141

**Taxpayer Identifying Number:**

**Tax Year Ended:**
 December 31, 2008

 7014 0150 0001 9015 0413

**CERTIFIED MAIL**

Dear Tax Matters Partner:

### NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above.  We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership.  (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice.  Any partner who wants a copy of the examination report should request it from the TMP.  If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return.  Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments,* is a summary of the proposed adjustments to the partnership return.  You may compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts,* is a summary of the proposed adjustments to the partnership return. IRC section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

You have three options available to you.

1. **If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership".*

2. **If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions.  If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership.  The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP.  If more than one petition is filed in Tax Court, the first petition filed will go forward.  All other petitions (even those filed earlier in one of the other courts) will be dismissed.  If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, N.W.**
**Washington, D.C.  20217**

Attach a copy of this letter to the petition.  The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late.  If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition, or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA.  If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax.  You must deposit the appropriate amount with the IRS on or before the day you file your petition.

3.  **If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA.  You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit.  The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions please write to the person whose name and address are shown in the heading of this letter.  If you write, attach a copy of this letter to help identify your account.  Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

<div style="margin-left: 50%;">

Sincerely,
John A. Koskinen
Commissioner
By

Mark C Pettigrew
Supervisory Appeals Officer

</div>

.Enclosures:
  Form 870-PT
  Copy of this Letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments.  You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter.  Thank you for your cooperation.

| Form **870-PT** (Rev. 4-2012) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: AP:FE:JAX:VCW |
|---|---|---|
| Taxpayer(s) name(s), address and zip code: JUDSON PROPERTIES LLC TAX MATTERS PARTNER PARTITA PARTNERS LLC 145 EAST 57TH STREET NEW YORK NY 10022-2141 TIN: | Name of Partnership: PARTITA PARTNERS LLC EIN: 90-0066244 | Tax Year(s) Ended: 12/31/2008 |
| | Name of Tax Matters Partner: JUDSON PROPERTIES LLC | |

### Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under the provisions of sections 6224(c) and 7121 of the Internal Revenue Code (IRC), the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law). IRC Section 6651 late filing penalty applies to any late filed (or non-filed) returns that are required to report the partnership item adjustments.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office Jacksonville, FL | Title Supervisory Appeals Officer |

Catalog Number 57315A          www.irs.gov.          (See instructions for Signing Agreement)          Form **870-PT** (Rev. 4-2012)

Page 6 of 9

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items *and partnership level determinations as to penalties, additions to tax, and additional amounts,* as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust. If the trustee is signing this agreement on behalf of the trust and all beneficiaries, a Form 56 must be signed by the trustee. If an individual beneficiary is signing the agreement to bind themselves to the agreement, no Form 56 is needed.

6. If the partner is an LLC, the agreement should be signed by the manager of the LLC or other authority as authorized by State law. The signature line should show: [Name of LLC], by [Name of Manager], Followed by the title [Manager].

7. For a partner who is a subsidiary corporation in a consolidated group:

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a).

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block. The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

8. For a partner who is the common parent corporation of a consolidated group, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

9. If the Tax Matters Partner signs this offer, please include the title with the signature.

10. If the Tax Matters Partner is a subsidiary corporation in a consolidated group:

    - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block

    - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v). The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

**NOTE:** The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

Department of the Treasury — Internal Revenue Service

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

### SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| PARTITA PARTNERS LLC<br><br>EIN   90-0066244 | 12/31/2008 | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | | | |
| OTHER ADJUSTMENTS | | | |
| A. (1) Charitable contributions 50 percent | | | |
|     (1) ADJUSTMENT | 4,236,000 | | |
|     (2) AS REPORTED | 4,236,000 | | |
|     (3) CORRECTED | 0 | | |
| B. | | | |
|     (1) ADJUSTMENT | | | |
|     (2) AS REPORTED | | | |
|     (3) CORRECTED | | | |

REMARKS

(2) Accuracy penalty under IRC 6662 (at 40%) should be assessed. Investor level defenses to the accuracy penalty may be raised in a refund forum after the penalty is assessed.

All items not shown on this Schedule of Adjustments are accepted as filed.

| Form **886-A**<br>(Rev. May 1980) | Department of the Treasury - Internal Revenue Service<br>**EXPLANATION OF ADJUSTMENTS** | Schedule No. |
|---|---|---|
| Name of Taxpayer(s)<br><br>PARTITA PARTNERS LLC | | Year/Period<br><br>200812 |

**(1) Charitable contributions**

It has not been established that all the requirements of I.RC. Section 170 has been satisfied for the non-cash charitable contribution of a qualified conservation contribution. Further, it has not been established that all the requirements of I.RC. Section 170 has been satisfied for the cash charitable contribution of $50,000.00. Accordingly, the charitable contribution deduction is decreased by $4,236,000.00 for the tax year ended December 31, 2008

Alternatively, if it is determined that all the requirements of I.RC. section 170 have been satisfied for all or any portion of the claimed non-cash charitable contribution, it has not been established that the value of the contributed property interest was decreased by $4,186,000.00, as claimed on the 2008 return.

**(2) Accuracy Penalty**

It is determined that any underpayment of tax resulting from the disallowance of the partnership item of the contribution of the conservation easement is attributable to a gross valuation misstatement under Sections 6662(a), 6662(b)(3), and 6662(h) of the Internal Revenue Code. Accordingly, the accuracy-related penalty is imposed at the partner level under Section 6662(a) of the Internal Revenue Code in the amount of **forty (40) percent** of the portion of the underpayments of tax related to the partners' returns attributable to the disallowance of the charitable contribution related to the conservation easement under Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

In the alternative, if it is determined that any underpayment of tax resulting from the disallowance of the partnership item of the contribution of the conservation easement is not attributable to a gross valuation misstatement, then it is determined that any underpayment of tax resulting from the disallowance of the partnership item of the contribution of the conservation easement is attributable to (1) negligence or disregard of rules or regulations under Sections 6662(b)(1) and 6662(c) of the Internal Revenue Code, (2) any substantial understatement of income tax under Sections 6662(b)(2) and 6662(d) of the Internal Revenue Code, or (3) a valuation misstatement under Sections 6662(b)(3) and 6662(e) of the Internal Revenue Code. Accordingly, the accuracy-related penalty is imposed at the partner level under Section 6662(a) of the Internal Revenue Code in the amount of **twenty (20) percent** of the portion of the underpayment of tax related to the partners' returns attributable to the disallowance of the charitable contribution related to the conservation easement. The partnership and partners have not shown there was reasonable cause for the underpayments of tax, that the partnership acted in good faith, or that any other exceptions apply.

**Internal Revenue Service**
IRS - Appeals Office
400 West Bay Street, Suite 252
STOP A
Jacksonville, FL  32202

**Department of the Treasury**

**Person to Contact:**
 Vivian C. Watson
 Employee ID Number: 0228952
 Tel:   904-665-0976
 Fax:  904-665-1835

Date:   NOV 1 0 2014

**Refer Reply to:**
 AP:FE:JAX:VCW
**Name of Partnership:**
 Partita Partners LLC

TAX MATTERS PARTNER
PARTITA PARTNERS LLC
145 EAST 57TH STREET
NEW YORK NY 10022-2141

**Partnership Identifying Number:**
 90-0066244
**Date FPAA Mailed to Tax Matters Partner:**

7014 0150 0001 9015 0420

**Taxpayer Identifying Number:**

**Tax Year Ended:**
 December 31, 2008

**CERTIFIED MAIL**

Dear Tax Matters Partner:

### NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above.  We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership.  (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice.  Any partner who wants a copy of the examination report should request it from the TMP.  If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return.  Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments,* is a summary of the proposed adjustments to the partnership return.  You may compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return.  The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items.  Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts,* is a summary of the proposed adjustments to the partnership return.   IRC section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments.  You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

You have three options available to you.

    1.  **If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT.  When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return.  For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items, if any.  In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items for the tax year in question.  This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service.  When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership".*

    2.  **If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter.  During this 90-day period, no other partner may file a petition for judicial review.  You can file your petition for readjustment of partnership items with:

    1.  the United States Tax Court;
    2.  the United States Court of Federal Claims; or
    3.  the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, N.W.**
**Washington, D.C.  20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition, or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

3. **If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions please write to the person whose name and address are shown in the heading of this letter.  If you write, attach a copy of this letter to help identify your account.  Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

Sincerely,
John A. Koskinen
Commissioner
By

Mark C Pettigrew
Supervisory Appeals Officer

Enclosures:
  Form 870-PT
  Copy of this Letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments.  You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter.  Thank you for your cooperation.

| Form **870-PT** (Rev. 4-2012) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: AP:FE:JAX:VCW |
|---|---|---|

| Taxpayer(s) name(s), address and zip code: | Name of Partnership: PARTITA PARTNERS LLC | Tax Year(s) Ended: 12/31/2008 |
|---|---|---|
| TAX MATTERS PARTNER PARTITA PARTNERS LLC 145 EAST 57TH STREET NEW YORK NY 10022-2141 | EIN: 90-0066244 | |
| TIN: | Name of Tax Matters Partner: | |

### Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under the provisions of sections 6224(c) and 7121 of the Internal Revenue Code (IRC), the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law). IRC Section 6651 late filing penalty applies to any late filed (or non-filed) returns that are required to report the partnership item adjustments.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office Jacksonville, FL | Title Supervisory Appeals Officer |

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items *and partnership level determinations as to penalties, additions to tax, and additional amounts,* as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust. If the trustee is signing this agreement on behalf of the trust and all beneficiaries, a Form 56 must be signed by the trustee. If an individual beneficiary is signing the agreement to bind themselves to the agreement, no Form 56 is needed.

6. If the partner is an LLC, the agreement should be signed by the manager of the LLC or other authority as authorized by State law. The signature line should show: [Name of LLC], by [Name of Manager], Followed by the title [Manager].

7. For a partner who is a subsidiary corporation in a consolidated group:

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a).

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block. The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

8. For a partner who is the common parent corporation of a consolidated group, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

9. If the Tax Matters Partner signs this offer, please include the title with the signature.

10. If the Tax Matters Partner is a subsidiary corporation in a consolidated group:

    • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign it, as the Tax Matters Partner, is binding non-notice partners under the agreement. The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block

    • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v). The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

**NOTE:** The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

Department of the Treasury — **Internal Revenue Service**

**Agreement for Partnership Items and Partnership Level**
**Determinations as to Penalties, Additions to Tax, and**
**Additional Amounts**

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| PARTITA PARTNERS LLC | 12/31/2008 | | |
| EIN   90-0066244 | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | | | |
| OTHER ADJUSTMENTS | | | |
| A. (1) Charitable contributions 50 percent | | | |
| (1) ADJUSTMENT | 4,236,000 | | |
| (2) AS REPORTED | 4,236,000 | | |
| (3) CORRECTED | 0 | | |
| B. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

REMARKS

(2) Accuracy penalty under IRC 6662 (at 40%) should be assessed. Investor level defenses to the accuracy penalty may be raised in a refund forum after the penalty is assessed.

All items not shown on this Schedule of Adjustments are accepted as filed.

Catalog Number 57315A                    www.irs.gov                    Form **870-PT** (Rev. 4-2012)

| Form 886-A (Rev. May 1980) | Department of the Treasury - Internal Revenue Service<br>**EXPLANATION OF ADJUSTMENTS** | Schedule No. |
|---|---|---|
| Name of Taxpayer(s)<br><br>PARTITA PARTNERS LLC | | Year/Period<br><br>200812 |

#### (1) Charitable contributions

It has not been established that all the requirements of I.RC. Section 170 has been satisfied for the non-cash charitable contribution of a qualified conservation contribution. Further, it has not been established that all the requirements of I.RC. Section 170 has been satisfied for the cash charitable contribution of $50,000.00. Accordingly, the charitable contribution deduction is decreased by $4,236,000.00 for the tax year ended December 31, 2008

Alternatively, if it is determined that all the requirements of I.RC. section 170 have been satisfied for all or any portion of the claimed non-cash charitable contribution, it has not been established that the value of the contributed property interest was decreased by $4,186,000.00, as claimed on the 2008 return.

#### (2) Accuracy Penalty

It is determined that any underpayment of tax resulting from the disallowance of the partnership item of the contribution of the conservation easement is attributable to a gross valuation misstatement under Sections 6662(a), 6662(b)(3), and 6662(h) of the Internal Revenue Code. Accordingly, the accuracy-related penalty is imposed at the partner level under Section 6662(a) of the Internal Revenue Code in the amount of **forty (40) percent** of the portion of the underpayments of tax related to the partners' returns attributable to the disallowance of the charitable contribution related to the conservation easement under Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

In the alternative, if it is determined that any underpayment of tax resulting from the disallowance of the partnership item of the contribution of the conservation easement is not attributable to a gross valuation misstatement, then it is determined that any underpayment of tax resulting from the disallowance of the partnership item of the contribution of the conservation easement is attributable to (1) negligence or disregard of rules or regulations under Sections 6662(b)(1) and 6662(c) of the Internal Revenue Code, (2) any substantial understatement of income tax under Sections 6662(b)(2) and 6662(d) of the Internal Revenue Code, or (3) a valuation misstatement under Sections 6662(b)(3) and 6662(e) of the Internal Revenue Code. Accordingly, the accuracy-related penalty is imposed at the partner level under Section 6662(a) of the Internal Revenue Code in the amount of **twenty (20) percent** of the portion of the underpayment of tax related to the partners' returns attributable to the disallowance of the charitable contribution related to the conservation easement. The partnership and partners have not shown there was reasonable cause for the underpayments of tax, that the partnership acted in good faith, or that any other exceptions apply.

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008102900023001001E0F47

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 25 |
|---|---|

| Document ID: 2008102900023001 | Document Date: 10-28-2008 | Preparation Date: 10-29-2008 |
|---|---|---|
| Document Type: EASEMENT | | |
| Document Page Count: 24 | | |

**PRESENTER:**
TRUST FOR ARCHITECTURAL EASEMENTS
1906 R STREET, NW
SUITE 100
WASHINGTON, DC  20009
202-797-5290
jscheer@architecturaltrust.org

**RETURN TO:**
TRUST FOR ARCHITECTURAL EASEMENTS
1906 R STREET, NW
SUITE 100
WASHINGTON, DC  20009
202-797-5290
jscheer@architecturaltrust.org

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1405 | 16 | Entire Lot | 964 LEXINGTON AVENUE |

**Property Type:** INDUSTRIAL BUILDING   Easement

### CROSS REFERENCE DATA

CRFN_____   *or*  Document ID_____   *or* _____  Year_____  Reel____  Page ____  *or*  File Number _____

### PARTIES

**GRANTOR/SELLER:**
PARTITA PARTNERS LLC
145 EAST 57TH STREET
NEW YORK, NY  10022

**GRANTEE/BUYER:**
TRUST FOR ARCHITECTURAL EASEMENTS
1906 R STREET NW
WASHINGTON, DC  20009

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Filing Fee: | |
| Taxable Mortgage Amount: | $ | 0.00 | | $ | 50.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES:  County (Basic): | $ | 0.00 | | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | | $ | 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 157.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed        10-31-2008 10:16
City Register File No.(CRFN):
**2008000424923**

*Annette M. Hill*

*City Register Official Signature*

# HISTORIC PRESERVATION DEED OF EASEMENT

THIS is an Historic Preservation Deed of Easement (the "Easement"), made on the 20th day of August, 2008 by Partita Partners LLC, with a mailing address at 145 East 57th Street, New York, NY 10022 ("Grantor," the term being used collectively if there is more than one owner of the Property), to the Trust for Architectural Easements , with offices at 1906 R Street, NW, Washington, D.C. 20009 ("Grantee").

## RECITALS

A.      Grantee is a non-profit corporation chartered under the laws of the District of Columbia to promote a public aesthetic in land use planning, including the preservation of historically important properties, and is a "qualified organization" as defined in Section 170(h)(3) of the Internal Revenue Code.

B.      Grantee is authorized to accept and administer gifts of real and personal property, including easements and restrictions for conservation and historic preservation purposes, in furtherance of its tax-exempt purposes. Grantee has the resources to manage and enforce this Easement and, by execution of this Easement, commits to its enforcement.

C.      Grantor is the owner, in fee simple, of real property commonly known as 964-966 Lexington Avenue, New York, NY 10022, as legally described on Attachment A, attached hereto and incorporated herein by this reference and in a Deed recorded with the Office of the City Register of the City of New York in City Register File No. (CRFN) 2003000243762 (the "Property").

D.      The Property is improved with a structure (the "Building" and, together with the Property, the "Premises"), more fully described in the baseline documentation attached hereto and incorporated herein by this reference as Attachment B.

E.      The Property consists of: two two-bay, four-story ashlar brownstone faced residences with commercial storefronts and windows. Built in 1871-1872 in the Italianate style, the structures retain original carved bracketed cornices. Refer to Attachment B for a full description.

F.      The Property is a contributing resource to the Upper East Side Historic District, listed on the National Register of Historic Places on September 7, 1984, and is also included in the Upper East Side Historic District, established by the City of New York on May 19, 1981. The grant of the restriction as set forth in this instrument will assist in preserving a certified historic structure

Total number of pages: 24

Return to:  Jackie Scheer
Trust for Architectural Easements
1906 R Street, NW
Washington, D.C. 20009

and its character-defining features as depicted in photographs and descriptions on Attachment B and defined herein below as "Protected Façades".

G.     Grantor, on behalf of itself and any successors or assigns, desires to grant in perpetuity to Grantee, and Grantee desires to accept from Grantor, the Easement on the Premises, exclusively for conservation and historic preservation purposes.

H.     The term "Protected Façades", as used herein, consists of all exterior surfaces of the Building, including, but not limited to, all exterior walls, windows and doors on the front, sides and rear of the Building, the height of the Building, including, but not limited to, the roofs and chimneys and any other character-defining features of the Premises.  Written descriptions and photographs of the Protected Façades and their character-defining features are appended hereto as part of Attachment B.  It is the intent of the parties that the Protected Façades remain essentially unchanged and, wherever visible from a public way, in full public view.  Any change to the Protected Façades shall require prior express written approval by Grantee and shall be consistent with the historical character of the Protected Façades, as required under Section 170 of the Internal Revenue Code of 1986, as amended (the "Code") and related Treasury Regulations, and be in compliance with any other applicable federal laws, including, but not limited to, *The Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for Preserving, Rehabilitating, Restoring and Reconstructing Historic Buildings* (36 C.F.R. §§ 67 & 68), as amended from time to time (the "Secretary's Standards"), and any applicable state and local laws (hereinafter, collectively, "Applicable Preservation Laws").  In case of ambiguity regarding the condition of the Protected Façades at the time of conveyance of the easement, the photographs and descriptions constituting Attachment B shall control.

I.     Grantor intends to preserve the Protected Façades in their entirety, to prevent the destruction of the Building and to prevent the alteration of the size, profile and silhouette of the Building in any manner that would adversely affect the appearance or structural integrity of the Protected Façades.

J.     It is the purpose of this Easement to assure that the architectural, historical and cultural features of the Premises will be retained and maintained forever, substantially in their current condition for conservation and preservation purposes in the public interest, and to prevent any change to the Premises that will impair or interfere with the conservation and preservation values of the Premises or that will be detrimental to its preservation and to preserve and protect the architectural, historical and cultural characteristics of the Upper East Side Historic District.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements set forth herein, including the terms, conditions and restrictions hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor does hereby grant, give, bargain, transfer and convey to Grantee, its successors and assigns, irrevocably and forever, an easement, in gross, in perpetuity, in, on and to the Premises and the Protected Façades,

being an Historic Preservation Deed of Easement on the Property, with the following rights and conditions:

1.     **Covenants of Grantor; Prohibited Activities**.  Without the express written consent of Grantee, which consent shall only be given if in compliance with standards set forth in Applicable Preservation Laws, and which may be withheld, conditioned or delayed in the sole and absolute discretion of Grantee, Grantor shall not undertake nor suffer nor permit to be undertaken:

a)     The demolition, razing, destruction or removal of the Building or any portion of the Protected Façades.

b)     Any alteration, construction or remodeling of existing improvements on the Property, or the placement thereon or on the Building or Protected Façades of signs or markers that would alter or change the condition or appearance of the Protected Façades as they existed on the effective date of this Easement, and as documented in photographs and written descriptions included in the baseline documentation set forth on Attachment B; provided, however, that dignified signs or markers may be placed on the Protected Façades without consent of Grantee so long as they: (i) indicate no more than the street address and occupants of the premises; or (ii) are necessary to direct pedestrians or vehicular traffic; or (iii) commemorate the history of the Property or the grant of this easement; or (iv) do not unduly obscure or cause damage to the character-defining features of the Protected Façades as described on Attachment B; or (v) are at the ground floor level identifying retail stores located in the Building's ground floor and meet the City of New York's commercial signage rules.

c)     Any exterior extension of existing improvements on the Property or the erection of any new or additional improvements on the Property or in the open space above or surrounding the existing improvements.

d)     The rebuilding of the Protected Façades if totally or substantially destroyed, (e.g., by fire).  In considering the request for Grantee's approval, Grantee shall permit some variations in the reconstruction and replication of the Protected Façades, so long as the rebuilt Protected Façades will be consistent with the style, mass and height characteristics of the Historic District in which the Property is located, as determined in Grantee's sole discretion, and in compliance with any standards or requirements set forth in Applicable Preservation Laws, including, but not limited to, the Secretary's Standards.

e)     Any exterior extension of the existing improvements or erection of any new internal or external improvements on the Property affecting the store front(s), if any, located at the ground floor level of the Protected Façade(s).

f)     The painting or cleaning of the Protected Façades in a manner incompatible with the protection and preservation of the Protected Façades; provided, however, that the painting and cleaning in connection with regular maintenance of presently existing elements of the Protected

Façades is permitted without Grantee's consent so long as it is conducted in a manner which will maintain the appearance of the Protected Façades as they exist at this date and so long as it is conducted in a manner which is in compliance with the standards set forth under Applicable Preservation Laws.

g)     The reconstruction, repair and refinishing of presently existing elements of the Protected Facades, damage to which has resulted from casualty loss, destruction or deterioration; provided, however, that Grantee's consent shall not be unreasonably withheld if such reconstruction, repair and refinishing will be conducted in a manner which will maintain the appearance of the Protected Façades as they exist at this date and so long as it will be conducted in a manner which is in compliance with the standards set forth under Applicable Preservation Laws.

h)     To the extent that Grantor owns or is entitled to development rights, including, but not limited to, the Reserved Development Rights (as defined below), which may exist now or at some time hereafter by reason of the fact that under any applicable zoning or similar ordinance the Premises may be developed to a use more intensive (in terms of height, bulk or other objective criteria regulated by such ordinances) than the Premises are devoted as of the date hereof, the exercise or transfer of such development rights on, above or below the Premises in a manner that would interfere with the preservation and conservation purposes of this Easement.

Grantor and Grantee agree to abide by the Change Approval Guidelines attached hereto and incorporated herein as Attachment C.

2.     **Grant of Development Rights.**  Grantor further desires to grant to Grantee any and all developmental rights associated with the Premises, with the exception of 2700 square feet, which shall be reserved for the future expansion of the Property in accordance with the terms of this Easement (the "Reserved Development Rights"). For purposes of this Easement, the development rights granted to Grantee shall include any and all rights with the exception of the Reserved Development Rights, however designated, now associated with the Premises that may be used, pursuant to applicable zoning laws or other governmental laws or regulations, to compute permitted size, height, bulk or number of structures, development density, lot yield, or any similar development variable on or pertaining to the Premises (the "Extinguished Development Rights"). The parties acknowledge such grant shall forever remove the Extinguished Development Rights from the Premises, prohibit Grantor from transferring or otherwise using the Extinguished Development Rights, and effectively extinguish the Extinguished Development Rights. In the event that Grantor, or its successors or assigns, shall propose to alter the Premises through the exercise or use of the Reserved Development Rights, or any other development rights, the express written consent of the Grantee shall be required.

3.     **Standards of Work**.  Grantor agrees that any repair, replacement, alteration or rehabilitation or new construction work on the Protected Façades, whether or not Grantee has given consent to undertake the same, shall comply with the requirements of Applicable

Preservation Laws and all other applicable federal, state and local governmental laws and regulations. Without limiting the foregoing, in undertaking maintenance, repair, replacement or reconstruction, Grantor shall apply the Secretary's Standards.

4.    **Maintenance**.   Grantor agrees to maintain in good order the Protected Façades, the foundations and the overall structural integrity of the Building in the condition and appearance existing on the effective date of this Easement as documented in photographs and written descriptions included in the baseline documentation set forth on Attachment B.  In the case of a building where the government requires periodic engineering reports on the soundness of some or all elements of the building, Grantor promises to promptly: (a) prepare and file or cause the preparation and filing of such reports with the requisite governmental authority, and (b) provide copies of such reports to Grantee.

5.    **Grantor's Representations and Warranties**.  Grantor represents and warrants that:

a)    Grantor is the owner in fee simple of the Premises;

b)    Grantor is fully authorized and empowered to execute and deliver this Easement;

c)    There is no lien, encumbrance, contract or governmental prohibition against the execution and delivery of this Easement and the performance by Grantor of all of Grantor's obligations hereunder; and

d)    Grantor acknowledges and understands that: (i) all mortgage and lien holders must subordinate or partially release their interests in the Premises to the conservation purposes of this Easement for the donation of the easement to qualify as a tax-deductible contribution, and (ii) if, for any reason, this Easement is not in the first position, the tax deductibility of the easement donation may be at risk.

e)    Grantor acknowledges and understands that Grantee has no liability or responsibility of any kind related to the Premises, including the ownership, operation, insurance or maintenance of the Premises.

6.    **Arbitration**.  If a dispute arises between Grantor and Grantee concerning the consistency of any proposed activity with the purpose or restrictions of this Easement, and Grantor agrees not to proceed with the activity pending resolution of the dispute, either party may refer the dispute to arbitration by request made in writing to the other.  Arbitration shall be conducted in the locality where the Property is located in accordance with the rules and regulations of the Expedited Procedures of the American Arbitration Association, before three (3) arbitrators, one (1) chosen by each of Grantor, Grantee and the above chosen arbitrators, provided that such arbitrators shall have not less than ten (10) years of experience in the field of restoration, rehabilitation and preservation of landmark and historic buildings and sites.  Judgment by such arbitrators shall be fixed and binding upon all parties and may be entered in any court having jurisdiction thereover.

Each party shall be responsible for its own legal fees and expenses, for the costs and expenses of the arbitrator designated by it, and for one-half (1/2) of the costs and expenses of the third arbitrator. Each party shall appoint its arbitrator within ten (10) business days of service of the arbitration notice, and in the event any of the parties shall fail to do so, the arbitrator chosen by the other party alone shall be entitled to issue a decision binding both of the parties hereto, and in such case each of the parties hereto shall be responsible for one-half (1/2) of such single arbitrator's legal fees and expenses. The arbitrator(s) shall issue their decision within twenty-one (21) days of submission.

7.      **Remedies.** Grantee, in order to ensure the effective enforcement of this Easement, shall have, and Grantor hereby grants it, the following rights and remedies:

        a)      At reasonable times and upon reasonable notice, the right to enter upon and inspect the Protected Façades and any improvements thereon. Grantor acknowledges that in order for Grantee to obtain proper access to inspect the Protected Façades, Grantee may require access through the interior of the Building.

        b)      In the event of a violation of this Easement and Grantor's failure to cure, or to propose to Grantor a cure agreement that is acceptable to Grantee in its sole discretion, within fifty (50) business days (subject to force majeure) of the date of a Violation Notice ("Violation Notice" shall mean written notification to Grantor of a violation of this Easement setting forth the commencement of the fifty-day period to cure or propose an acceptable agreement to cure to Grantee):

                (i)      the right to institute legal proceedings to enjoin such violation by temporary, and/or permanent injunction, including prohibitory or mandatory injunctive relief, to require the restoration of the Property or the Building, including the Protected Façades and open space appurtenant thereto, to their prior condition, in addition to such other relief to which Grantee may be entitled, including specific performance of the terms of this Easement, without the necessity of proving either actual damages or the inadequacy of otherwise available legal remedies, to be reimbursed by Grantor for all reasonable costs and attorneys' fees, and to avail itself of all other legal and equitable remedies;

                (ii)     the right to:  (x) enter upon the Premises and improvements thereon in order to correct such violation, (y) hold Grantor responsible for the cost thereof, and (z) obtain a judgment against Grantor with respect to the cost of all labor performed and materials furnished to complete such improvements; and

                (iii)    the right to place a lien against the Property to secure the payment of any of Grantor's obligations arising under this Easement. Notwithstanding any provision of this Easement to the contrary, any lien securing Grantee and created pursuant to Grantor's obligations hereunder shall be subordinate to the liens on the Premises of Apple Bank for Savings dated June 26, 2003, and recorded with the Office of the City Register of the City of New York at City Register File No. (CRFN) 2003000243763 and 2003000243765 on July 21, 2003, its successors

and assigns and any other bank, savings and loan, commercial finance company or other lending institution that has made a loan to any owner of the Premises, whether such lien be now existing or hereafter created (each, a "Mortgage Lien Lender" and, collectively, "Mortgage Lien Lenders"). The sale or transfer of the Premises pursuant to a foreclosure or any proceeding in lieu thereof shall extinguish Grantee's lien, subject to Grantee's rights to receive any excess proceeds in accordance with Grantee's order of priority. Furthermore, any indebtedness represented by Grantee's lien shall continue as a personal obligation of Grantor, Grantor's successors, heirs and assigns, and all other successors in interest to Grantor.

Grantee agrees to provide to the Mortgage Lien Lender(s) then reflected in Grantee's records copies of all Violation Notices (as defined above) delivered by Grantee to Grantor within five (5) days of delivery of such Violation Notice to Grantor.

c)        In the event of a threatened violation of this Easement, the right to institute legal proceedings to enjoin such violation by temporary, and/or permanent injunction.

d)        Exercise by Grantee of one remedy hereunder shall not have the effect of waiving or limiting any other remedy, and the failure to exercise any remedy shall not have the effect of waiving or limiting the use of any other remedy or the use of such remedy at any other time.

**8.      Insurance**.  Grantor, at its own expense, shall keep the Premises insured by an insurance company against loss from the perils commonly insured under the broadest standard property owner's and comprehensive general liability insurance policies in use from time to time, including, without limitation, fire, lightning, wind storm, hail, explosion damage by vehicles, smoke, vandalism, malicious mischief, weight of ice, snow or sleet, freezing of plumbing, HVAC or sprinkler systems, and sudden and accidental damage from artificial electrical current explosion, in such amounts as would normally be carried on a structure such as the Building. Such insurance shall include Grantee's interest, shall name Grantee as an additional insured and shall provide for at least thirty (30) days' notice to Grantee before cancellation. In the event that Grantor fails to obtain insurance, Grantee shall have the right, but not the obligation, to provide the same at Grantee's cost and expense, in which event the cost of such insurance shall constitute a lien on the Premises until repaid by Grantor. Whenever the Premises is encumbered with a mortgage or deed of trust, nothing contained in this paragraph shall jeopardize the prior claim, if any, of the mortgagee/lender to the insurance proceeds.

**9.      Indemnification**.  Grantor shall pay, protect, defend, indemnify and hold harmless Grantee and its directors, officers, trustees, employees, agents and contractors, and the successors and assigns of each of them (collectively, the "Indemnified Parties"), from and against any and all claims, judgments, liabilities, penalties, costs, damages and expenses (including, without limitation, reasonable attorneys' fees arising out of or in connection with the Building or the Property (a "Claim" or "Claims"), including, without limitation: (a) injury to or death of any person, (b) physical damage to the Property, (c) the presence of or release onto the Property of any hazardous, toxic, polluting or contaminating substance, (d) any other injury or damage occurring

on or about the Building or the Property, (e) any real property taxes and general or special assessments assessed against the Building or the Property, or (f) this Easement, the conveyance or possession hereof or the exercise of any rights hereunder; provided, however, that Grantor shall not indemnify any of the Indemnified Parties to the extent that any Claim or Claims are based upon the gross negligence or willful misconduct of such Indemnified Party.

**10.** **Proposed Sale**.  Grantor shall promptly notify Grantee in writing of any proposed sale of the Premises.  Grantor agrees to incorporate the terms of this Easement by reference in any deed or other legal instrument by which Grantor divests themselves of any interest in all or a portion of the Premises, including without limitation, a leasehold interest.  The failure of Grantor to perform any act required by this paragraph shall not impair the validity of this Easement or limit its enforcement in any way; provided, however, that if Grantor fails to provide notice of this Easement to any future purchaser or lien holder prior to the date that this Easement is recorded, Grantor acknowledges that this Easement may be found invalid or unenforceable in perpetuity and that Grantor's tax deduction in connection with this easement donation may be disallowed.

**11.** **Liens**.

a)      Any lien on the Premises created pursuant to this Easement may be confirmed by judgment and foreclosed by Grantee in the same manner as a judgment lien, except that no lien created pursuant to this Easement shall jeopardize the priority of any recorded lien of mortgage or deed of trust given in connection with a promissory note secured by the Premises.

b)      Any lien on the Premises created pursuant to this Easement shall be subordinate to the easement itself.

**12.** **Subordination or Partial Release**.  At the time of conveyance of the easement, the Premises are subject to a mortgage, the holder of which has agreed by separate instrument, a copy of which is attached hereto as Attachment D and incorporated by this reference, to subordinate or partially release its rights in the Premises to the extent necessary to permit Grantee to enforce the purposes of this Easement in perpetuity and to prevent any modification or extinguishment of this Easement by the exercise of any rights of the mortgage holder

**13.** **Binding Effect; Assignment**.

a)      This Easement is binding not only upon Grantor but also upon its successors, heirs and assigns and all other successors in interest to Grantor, and the word "Grantor", when used herein, shall include all such persons ("person" shall mean an individual or an entity, as the case may be).  This Easement shall: (i) be effective in perpetuity, (ii) be deemed to run as a binding servitude with the Property, and (iii) survive any termination of Grantor's existence.  A person shall have no obligation pursuant to this Easement after such person ceases to have any interest in the Premises and Protected Façades by reason of a bona fide transfer for full value and shall not have any liability arising from acts or omissions committed subsequent to such transfer; provided,

however, that such a transfer shall not relieve any person from liability arising from acts or omissions committed prior to such transfer, for which such person shall remain liable.

b)     This Easement shall survive any termination of Grantee's existence.   This Easement is fully transferable by Grantee; provided, however that Grantee shall not transfer, assign or otherwise convey its rights under this Easement: (i) except to another "qualified organization" described in Section 170(h)(3) of the Code and controlling Treasury regulations, and (ii) unless the transferee: (x) is an organization whose purposes, inter alia, are to promote the preservation or conservation of historic, cultural or architectural resources, and (y) agrees to continue to carry out the conservation purposes for which the easement was created; provided further that nothing herein contained shall be construed to limit Grantee's right to give its consent (e.g., to changes to a Protected Façade).  The rights of Grantee under this Easement shall run for the benefit of and may be exercised by its successors and assigns, or by its designees duly authorized in a deed of easement.

**14.     Effective Date**.  This Easement shall be effective as of the date that this Easement is submitted for recording with the appropriate land records register's office.

**15.     Conversion Proceeds**.  As required pursuant to Treasury Regulation 1.170A-14(g)(6), Grantor hereby agrees and acknowledges that the donation of this easement gives rise to a property right, immediately vested in Grantee, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift bears to the value of the property as a whole at that time as set forth by Grantor's appraisal.  In the event of an unexpected change in the conditions surrounding the Property making impossible or impractical the continued use of the Property for conservation purposes, Grantor and Grantee may petition for judicial extinguishment of the easement pursuant to the requirements set for in New York State Consolidated Laws and in compliance with the requirements set forth in Treasury Regulation 1.170A-14(g)(6).  Grantee agrees to use any proceeds so realized in a manner consistent with the conservation purposes of the original contribution.

**16.     Photographs**.   Grantee may make photographs, drawings or other representations documenting the significant historical, cultural and architectural character and features of the Building and may use them to fulfill its charitable and educational purposes, including but not limited to distributing them to magazines, newsletters or other publicly available publications.

**17.     Entire Agreement**.  This Easement reflects the entire agreement between Grantor and Grantee.    Any prior or simultaneous correspondence, understandings, agreements, and representations are null and void upon execution hereof, unless set out in this instrument.

**TO HAVE AND TO HOLD**, the said Historic Preservation Deed of Easement, unto the said Grantee and its successors and permitted assigns forever. This **HISTORIC PRESERVATION DEED OF EASEMENT** may be executed in two counterparts and by each party on a separate

counterpart, each of which when so executed and delivered shall be an original, but both of which together shall constitute one instrument.

## <THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK>

TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 11

**IN WITNESS WHEREOF,** the Parties hereto have caused duplicate originals of this Historic Preservation Deed of Easement to be executed by their respective duly authorized representatives as of the date and year written below.

I declare under penalty of perjury that I am authorized to execute this Historic Preservation Deed of Easement on behalf of Grantor; I have examined the contents of this Easement; and I believe that all representations are true and correct to the best of my knowledge, information and belief.

**GRANTOR**

Partita Partners LLC

By: _____

Name: E. William Judson

Title: Managing Member

Date: 10/22/08

---

**Grantor Notarization**

| **(Taken within the State of New York)** | **(Taken outside the State of New York)** |
|---|---|
| State of New York ) ss.: | State of ) ss.: |
| County of NY ) | County of ) |
| On the 22 day of October, 2008, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared E. William Judson personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. | On the day of , 200_, before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in _____ *[city, state or county or other place acknowledgment taken].* |
| _____ Notary Public My commission expires: 9/16/10 | _____ Notary Public My commission expires: _____ |

JOHN T. CIARICO
Notary Public, State of New York
NO. 01CI6080430
Qualified in New York County
Commission Expires 9/16/10

I declare under penalty of perjury that I am authorized to execute this Historic Preservation Deed of Easement on behalf of Grantee; I have examined the contents of this Easement; and I believe that all representations are true and correct to the best of my knowledge, information and belief.

**GRANTEE**

Trust for Architectural Easements

(CORPORATE SEAL)

By: _Victoria C McCormick_
    Name: Victoria C. McCormick
    Title: Vice President

Date: _10/28/08_

### Grantee Notarization

District of Columbia  ) ss.

On this _28th_ day of _October_, 200_8_, before me, the undersigned notary public, personally appeared _Victoria C McCormick_, proved to me through satisfactory evidence of identification which was [a current driver's license] [a current U.S. passport] [my personal knowledge of the identity of the principal], to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purposes.

_Laura L. Thornton_
Notary Public

_Laura L. Thornton_
Print Name

My Commission Expires: _7/14/2010_

District of Columbia : SS
Subscribed and Sworn to before me, in my presence,
this _28th_ day of _October_ _2008_
_Laura L. Thornton_
Notary Public, D.C.
My commission expires _7/14/2010_

Laura L. Thornton, District of Columbia
Notary Public, District of Columbia
My Commission Expires 7-14-2010

Commercial
2008-NY-0023

Revised July 2007

## Attachment A

## Legal Description of Property (from Deed)

All that certain lot, piece or parcel of land, with the buildings and improvements thereon, situate in the Borough of Manhattan, the City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Lexington Avenue, distant 50 feet 5 inches northerly from the corner formed by the intersection of the northerly side of 70th Street with the westerly side of Lexington Avenue; thence westerly parallel with 70th Street, 80 feet; thence northerly parallel with Lexington Avenue, 33 feet 4 inches; thence easterly parallel with 70th Street and part of the distance through a party wall, 80 feet to the westerly side of Lexington Avenue; thence southerly along the westerly side of Lexington Avenue, 33 feet 4 inches to the point or place of BEGINNING.

TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 14

**Attachment B**

## Detailed Description and Photographs of Protected Façades

This late-19[th]-century building features two two-bay, four-story residences with commercial storefronts at the first floor and commercial windows on the second. Built in 1871-1872 with ashlar brownstone facing, these residences were built as part of a row of three (Nos. 964-968) in the Italianate style. The front façade of the combined building is very simple in style, with four two-over-two windows at both the third and fourth floors. The windows at the fourth floor are marked with slightly projecting but flat enframements. Those at the third floor have similar enframements but a continuous projecting sill. At the second floor, there are four large single-pane windows, each with a split transom accenting the top. At the end windows, the right transoms have been replaced with air-conditioning units. In the middle two windows, commercial signage is present. The entire composition is surrounded with a reeded enframement; carved garlands hanging from cartouches accent the mullions between the windows. The first floor storefronts have been placed within a framework of paired pilasters that mark the party walls at the edges and between the buildings. The first floor features two recessed store entrances. One is immediately to the left of the central pilasters; the other is in the center of the right section. The entrances are simple single-leaf doors with large single-pane windows and raised panels beneath the windows. To the left of both entrances are tall single-pane windows set above raised panels. Accenting the top of both doors are single-pane transom windows. To the left of the entrances are large single pane shop windows set over raised panels. Above the windows, a sign band sports the name of the store. There is a residential entrance to No. 966 to the far right of the front façade, with the door deeply recessed. Though architectural detail has been removed from the facades at the first two floors, the structure retains the original bracketed cornices, height, and scale of the openings at the upper floors. The cornices reflect the original configuration of the property as two distinct buildings. Each has three carved brackets, which support a molded overhang; dentils mark the intersection of the wall plane and overhang. The frieze boards between the brackets are enhanced with raised linear decoration.

The left and right sides of the building abut neighboring buildings.

The four-story, four-bay brick rear façade is simple in design, with the two original one-bay ells joined in the center. At the rear of the ells, there are two two-over-two sash variety windows at each level. Each window sports a slightly protruding sill that matches the brick facing of the façade. Modern mechanical systems scale the rear of the ell. The ells create deeply recessed single bays to the far left and far right at the upper floors, each of which has two-over-two windows. To the far right, a roof deck above the first floor connects the residence with its neighboring building. A similar roof deck with a metal railing is found at the left bay. A single-leaf door sporting a multi-light window serves as the rear entrance to the right side of the ell; immediately to its right is a pair of one-over-one sash windows with a protective grille and projecting sill. A solid metal service door provides entry at the left side of the ell.

TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 15

**Front Façade**



TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 16

**Storefront**



**Storefront**



Commercial
2008-NY-0023

Revised July 2007

TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 17

**Roofline**



**Front Façade Detail**



TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 18

Rear Façade



Rear Façade



TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 19

Rear Façade



Rear Façade



TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 20

**Rooftop**



**Rooftop**



**Attachment C**

## <u>Change Approval Guidelines</u>

1.      Grantor must obtain advance written approval from Grantee to perform any work on the Premises as set forth in Section 1 of the Easement.  Change requests submitted to Grantee should generally include the Proposed Modification Request Form, drawings or photographs showing existing conditions, drawings showing proposed conditions and historical documentation, when required by Grantee.  Grantee reserves the right to request Grantor submit additional information and documentation regarding proposed work.

2.      In many cases, Grantor must also receive approval from local historic preservation authorities prior to making exterior alterations to the property.  In order to avoid any delay, Grantee recommends Grantor simultaneously send to Grantee a copy of the submission Grantor submits to the local historic preservation authority.

3.      Grantor's mailing address, unless otherwise notified, is:

> Trust for Architectural Easements
> 1906 R Street, NW, Suite 100
> Washington, D.C. 20009
> Attention:  Director of Stewardship

4.      Grantee's review committee will review Grantor's request promptly.  Unless the proposed alterations are, in Grantee's opinion, quite complex, Grantee will respond to Grantor's change request within thirty (30) days.  If Grantee determines that additional documentation is required, Grantee will make such a request of Grantor within fifteen (15) days.  Grantee's response will provide that either: (a) Grantee does not object to Grantor's plans and Grantor may proceed as planned, (b) Grantor's plans require revision, along with a detailed explanation why such revisions are necessary, or (c) Grantee does not consent to Grantor's plans and Grantor may not proceed.

5.      Grantee monitors the condition and appearance of the exterior of the Protected Facades on an annual basis by taking exterior photographs of the Property and comparing the photographs to its baseline documentation as reflected on Attachment B to the Easement.  If Grantee identifies changes in the appearance of the Protected Facades that have not been approved by Grantee or deferred maintenance that threatens the character-defining features of the Protected Facades and/or the structural stability of the Building, Grantee will contact Grantor to initiate the process to redress any inappropriate changes or absence of maintenance of the Property.

## Attachment D

## LENDER AGREEMENT

Property at: 964-966 Lexington Avenue, New York, NY 10022; Loan # 000026744

Apple Bank for Savings ("Mortgage Lien Lender") hereby joins in the execution of this **HISTORIC PRESERVATION DEED OF EASEMENT** for the sole and limited purpose of subordinating its rights in the Property to the right of Grantee, its successors or assigns, to enforce the conservation purposes of this Easement in perpetuity under the following conditions and stipulations:

(a) Each Mortgage Lien Lender shall have a prior claim to all insurance proceeds as a result of any casualty, hazard or accident occurring to or about the Property and all proceeds of condemnation, and shall be entitled to same in preference to Grantee, notwithstanding that any mortgage or deed of trust securing such mortgage lien is subordinate in priority to the Easement.

(b) No Mortgage Lien Lender or purchaser in foreclosure shall have any obligation, debt, or liability under the Easement until after the Mortgage Lien Lender or a purchaser in foreclosure obtains ownership of the Property.  In the event of foreclosure or deed in lieu of foreclosure, the Easement is not extinguished.

(c) Nothing contained in this paragraph or in this Easement shall be construed to give any Mortgage Lien Lender the right to violate the terms of this Easement or to extinguish this Easement by taking title to the Property by foreclosure or otherwise.

By: _Paul Marin_

(CORPORATE SEAL)

Title: _VICE PRESIDENT_

Date: _8/2/08_

## Lender Notarization

### ACKNOWLEDGMENT

State of _New York_ )
) ss.:
County of _NY_ )
On the _20th_ day of _August_, 200_8_, before me, the undersigned, personally appeared _Paul Marino_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in _NY, NY_ _____ [city, state or county or other place acknowledgment taken]._

_Bruce Herman_
Notary Public

BRUCE HERMAN
NOTARY PUBLIC, State of New York
No. 31-4739061
Qualified in New York County
Commission Expires Sept. 30, 20_09_

My commission expires:

TRUST FOR ARCHITECTURAL EASEMENTS HISTORIC PRESERVATION EASEMENT – PAGE 23

## Attachment E

## LENDER AGREEMENT

Property at: 964-966 Lexington Avenue, New York, NY 10022; Loan # 000026745

Apple Bank for Savings ("Mortgage Lien Lender") hereby joins in the execution of this **HISTORIC PRESERVATION DEED OF EASEMENT** for the sole and limited purpose of subordinating its rights in the Property to the right of Grantee, its successors or assigns, to enforce the conservation purposes of this Easement in perpetuity under the following conditions and stipulations:

(d) Each Mortgage Lien Lender shall have a prior claim to all insurance proceeds as a result of any casualty, hazard or accident occurring to or about the Property and all proceeds of condemnation, and shall be entitled to same in preference to Grantee, notwithstanding that any mortgage or deed of trust securing such mortgage lien is subordinate in priority to the Easement.

(e) No Mortgage Lien Lender or purchaser in foreclosure shall have any obligation, debt, or liability under the Easement until after the Mortgage Lien Lender or a purchaser in foreclosure obtains ownership of the Property. In the event of foreclosure or deed in lieu of foreclosure, the Easement is not extinguished.

(f) Nothing contained in this paragraph or in this Easement shall be construed to give any Mortgage Lien Lender the right to violate the terms of this Easement or to extinguish this Easement by taking title to the Property by foreclosure or otherwise.

By: *Paul Merino*

(CORPORATE SEAL)

Title: *VICE PRESIDENT*

Date: *8/20/08*

## Lender Notarization

### ACKNOWLEDGMENT

State of *New York* )
) ss.:
County of *NY* )

On the *20* day of *August*, 200*8* before me, the undersigned, personally appeared *PAUL MARINO* personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in *NY, NY* _____ *[city, state or county or other place acknowledgment taken].*

*Bruce Herman*
Notary Public

BRUCE HERMAN
NOTARY PUBLIC, State of New York
No. 31-4739061
Qualified in New York County
Commission Expires Sept. 30, 20 *09*

My commission expires:

### Historic Preservation Deed of Easement

**Title No.**

**To:**
**TRUST FOR ARCHITECTURAL EASEMENTS**

**Section**
**Block**   1405
**Lot**      16
**County or Town**  New York
**Street Address**   964-966 Lexington Avenue
                                New York, NY 10022

**Once Recorded, Return By Mail To:**

Trust for Architectural Easements
1906 R Street, NW
Washington, D.C. 20009
Attn: Jackie Scheer

**Reserve This Space For Use Of Recording Office**