UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PARTITA PARTNERS LLC, DENISE JO LEVY,
A PARTNER OTHER THAN THE TAX
MATTERS PARTNER,

                      Plaintiff,

      v.

UNITED STATES OF AMERICA,

                      Defendant.

No. 15 Civ. 2561 (PKC)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
*Counsel for the United States of America*
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2793
Facsimile: (212) 637-2717

*Of Counsel:*
CALEB HAYES-DEATS
MICHAEL J. BYARS
Assistant United States Attorneys

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND .................................................................................................................... 2

A.   The IRS's Examination ............................................................................................ 2

B.   Partita's Appeal Within the IRS and the FPAA ...................................................... 3

C.   The Revised Civil Penalty Approval Form and Assessment of the Gross Valuation
     Misstatement Penalty ............................................................................................... 4

LEGAL STANDARDS .......................................................................................................... 5

ARGUMENT .......................................................................................................................... 5

POINT I.   THE COURT'S DISALLOWANCE OF PARTITA'S CLAIMED
           DEDUCTION DOES NOT PRECLUDE THE IMPOSITION OF
           A PENALTY FOR PARTITA'S VALUATION MISSTATEMENT ......................... 5

A.   The Plain Language of the Internal Revenue Code's Valuation Misstatement
     Penalty Provisions Permits the Imposition of Such Penalties Here ........................ 5

     1.   The Text and Structure of the Section 6662 ............................................... 5

     2.   The Plain Language of Section 6662 Supports the Imposition of Penalties ........... 7

B.   The Second Circuit's *Irom* Decision Supports the Government's Plain-Language
     Interpretation of Section 6662(b) ............................................................................ 9

C.   The Case Law Supports the Government's Interpretation of Section 6662(b) ......... 12

     1.   Pre-*Woods* Case Law ................................................................................ 12

     2.   The Supreme Court's Ruling in *Woods* ..................................................... 16

D.   The Government's Interpretation of Section 6662(b) Is Consistent With
     Congressional Purpose ............................................................................................. 18

POINT II.  THE IRS SATISFIED SECTION 6751(B), WHICH DOES NOT REQUIRE
           SUPERVISORY APPROVAL UNTIL A PENALTY IS ASSESSED ...................... 21

A.   Section 6751(b) Requires Only That Supervisory Approval Precede "Assessment" ........ 21

B.   Partita's Challenge Under Section 6751(b) Is Not Ripe, as the Penalties
     It Challenges Were Asserted in the Alternative and Have Not Been Assessed ............... 24

C.     The IRS Has Satisfied Section 6751(b)'s Requirements ....................................................24

D.     Even if the Court Accepted Partita's Interpretation of Section 6751(b),
Material Issues of Fact Would Still Preclude Summary Judgment ..................................25

CONCLUSION.........................................................................................................................26

# TABLE OF AUTHORITIES

Page

Cases:

*Alpha I, L.P. v. United States*,
    682 F.3d 1009 (Fed. Cir. 2012)...............................................................15, 17, 18

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
    548 U.S. 291 (2006).........................................................................................22, 23

*Baez v. JetBlue Airways Corp.*,
    793 F.3d 269 (2d Cir. 2015)...................................................................................5

*Bemont Invs., LLC v. United States*,
    679 F.3d 339 (5th Cir. 2012) ..........................................................................16, 19

*Brown v. Gardner*,
    513 U.S. 115 (1994).............................................................................................22

*Chemtech Royalty Assocs., L.P. v. United States*,
    823 F.3d 282 (5th Cir. 2016) ...............................................................................11

*Clearmeadow Invs., LLC v. United States*,
    87 Fed. Cl. 509 (2009) ............................................................................ 18-19, 20

*Deutche Bank Nat'l Trust Co. v. Quicken Loans Inc.*,
    810 F.3d 861 (2d Cir. 2015)...............................................................................5, 7

*Fidelity Int'l Currency Advisor A Fund, LLC v. United States*,
    661 F.3d 667 (1st Cir. 2011) ........................................................................15, 18, 19

*Gainer v. Comm'r*,
    893 F.2d 225 (1990)........................................................................................14, 17

*Graev v. Comm'r*,
    147 T.C. No. 16, 2016 WL 6996650 (T.C. Nov. 30, 2016)..................................... *passim*

*Gilman v. Commissioner*,
    933 F.2d 143 (2d Cir. 1991).............................................................................. *passim*

*Gustashaw v. Comm'r*,
    696 F.3d 1124 (11th Cir. 2012) ...........................................................................15

*Heasley v. Comm'r*,
    902 F.2d 380 (5th Cir. 1990) ........................................................................... *passim*

*Hibbs v. Winn*,
    542 U.S. 88 (2004)....................................................................................2, 21, 22

*Illes v. Comm'r*,
　　982 F.2d 163 (6th Cir. 1992) ...................................................15

*Irom v. Comm'r*,
　　866 F.2d 545 (2d Cir. 1989)................................................. *passim*

*Keller v. Comm'r*,
　　556 F.3d 1056 (9th Cir. 2009) ...........................................15, 19

*Massengill v. Comm'r*,
　　876 F.2d 616 (8th Cir. 1989) ............................................. *passim*

*Merino v. Comm'r*,
　　196 F.3d 147 (3d Cir. 1999)...................................................15

*Phillip v. Univ. of Rochester*,
　　316 F.3d 291 (2d Cir. 2003)...................................................23

*Savino v. City of New York*,
　　331 F.3d 63 (2d Cir. 2003)..................................................5, 25

*Todd v. Commissioner*,
　　862 F.2d 540 (5th Cir. 1988) ............................................. *passim*

*United States v. DiCristina*,
　　726 F.3d 92 (2d Cir. 2013)..................................................5, 18

*Woods v. United States*,
　　471 F. App'x 320 (5th Cir. 2012) ...........................................16

*Woods v. United States*,
　　134 S. Ct. 557 (2013).................................................... *passim*

*Zfass v. Comm'r*,
　　118 F.3d 184 (4th Cir. 1997) ...............................................15

<u>Statutes and Regulations</u>:
Omnibus Budget Reconciliation Act of 1989,
　　Pub. L. No. 101-239, § 7721, 103 Stat. 2106 ...........................9, 12

Pension Protection Act of 2006,
　　Pub. L. No. 109-280, 120 Stat. 780 (2006)...............................7, 20

26 U.S.C. § 170................................................................ *passim*

26 U.S.C. § 6225(a) .........................................................21, 23

26 U.S.C. § 6226(a) .............................................................21

26 U.S.C. § 6621(c)(1) (1986) ...................................................................................1, 10, 11

26 U.S.C. § 6659(a) (1986) ............................................................................................ *passim*

26 U.S.C. § 6662(a) ........................................................................................................ *passim*

26 U.S.C. § 6662(b) ........................................................................................................ *passim*

26 U.S.C. § 6662(c) ................................................................................................................ 2-3

26 U.S.C. § 6662(d) .................................................................................................................. 3

26 U.S.C. § 6662(e) ..........................................................................................................4, 6, 7

26 U.S.C. § 6662(h) ........................................................................................................ *passim*

26 U.S.C. § 6751(b) ........................................................................................................ *passim*

26 C.F.R. § 1.6662-2(c) .......................................................................................................... 24

Legislative Materials:
H.R. Rep. No. 97-201 (1981) ............................................................................................13, 18

H.R. Rep. No. 109-736 (2006) ...........................................................................................7, 20

S. Rep. No. 105-174 (1998) .................................................................................................... 23

Staff of Joint Comm. on Taxation, 109th Cong., *General Explanation of Tax Legislation Enacted in the 109th Congress* 590 (Joint Comm. Print 2007) ................................. *passim*

Defendant the United States of America (the "Government" or the "United States"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in opposition to plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

A trial in this case will establish that Partita's claimed $4.2 million deduction vastly exceeds the true value of the façade-preservation easement Partita donated (the "Easement"), and thus that the 40 percent gross valuation misstatement penalty was appropriately assessed. Partita's efforts to avoid the penalty phase of this proceeding through the present motion should be rejected.

Partita's first contention is that the Court's ruling upholding the disallowance of its tax deduction prevents the application of the Internal Revenue Code's penalty provisions designed to discourage taxpayers from making valuation misstatements. Partita is incorrect. Whenever an underpayment of tax "is attributable to one or more gross valuation misstatements," the taxpayer must pay a penalty equal to 40% of the underpayment. 26 U.S.C. § 6662(a), (h). The Second Circuit has interpreted the word "attributable" to mean "capable of being attributed." *Irom v. Comm'r*, 866 F.2d 545, 547 (2d Cir. 1989) (considering the penalty that formerly applied to tax-motivated transactions). Under that interpretation, an underpayment is capable of being attributed to a gross valuation misstatement even if it can also be attributed to other factors, such as the disallowance of a deduction. *Id.* In an effort to resist this conclusion, Partita mistakenly claims that *Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988), "governs in this case." ECF No. 76 at 20. That statement would not be true even in the Fifth Circuit, which has recognized that a recent Supreme Court decision, *Woods v. United States*, 134 S. Ct. 557 (2013), has effectively overruled *Todd*.

The Court also should reject Partita's argument that the 20 percent penalties that the IRS asserted in the alternative (*i.e.*, in the event that the Court does not find a gross valuation misstatement) are improper because it allegedly did not obtain appropriate supervisory approval under 26 U.S.C. § 6751(b). But the plain language of § 6751(b) requires only that supervisory approval occur prior to assessment, *Graev v. Comm'r*, 147 T.C. No. 16, 2016 WL 6996650, at *12 (T.C. Nov. 30, 2016), which the Supreme Court has defined as "the official recording of liability that triggers levy and collection efforts," *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). Here, the IRS has obtained supervisory approval for the alternative penalties, but has not yet assessed them, having instead assessed a 40 percent penalty. In the absence of any assessment of a 20 percent penalty, Partita's challenge is not yet ripe. Moreover, Partita's incorrect interpretation of § 6751(b) at most creates genuine disputes of material fact for trial.

Thus, the Court should deny Partita's motion in its entirety.

## BACKGROUND

### A.   The IRS's Examination

On January 14, 2013, IRS Examiner Michael Montgomery obtained approval from his Group Manager, Gregg Childers, to assert a 40 percent penalty against Partita for its deduction relating to the Easement. *See* ECF No. 76-2 (the "2013 Civil Penalty Approval Form").

On February 5, 2013, IRS Reviewer Karen Nowak executed a Reviewers Report as part of a mandatory review because Partita had requested an appeals conference. *See* ECF No. 76-3 (the "Reviewers Report"). The Reviewers Report recommended, *inter alia*, the assertion of alternative 20% penalties in the event that the gross valuation misstatement penalty was not upheld, but noted that such alternative penalty language was not required. *See id.* The Reviewers Report noted the possible assertion of a 20 percent penalty for negligence or disregard of rules or regulations for filing income tax returns pursuant to sections 6662(a), (b)(1), (c) (the

"negligence/disregard" penalty); or a 20 percent penalty for a substantial understatement of income tax pursuant to sections 6662(a), (b)(2), and (d) (the "substantial understatement" penalty). *See* ECF No. 76-3. The Reviewers Report was approved in writing by Nowak's immediate supervisor, Group Manager Kathleen J. Herr, on February 5, 2013. *Id.*

Receipt of the Reviewers Report, including the alternative penalty recommendations contained therein, was acknowledged by Montgomery and his Group Manager, Childers, on March 13, 2013. *See* DX4.

**B.    Partita's Appeal Within the IRS and the FPAA**

In connection with Partita's appeal, IRS Appeals Officer Vivian C. Watson prepared an Appeals Transmittal and Case Memo on or about July 25, 2014. *See* ECF No. 76-4 (the "Appeals Memo"). The Appeals Memo followed the recommendation to assert the negligence/disregard penalty and the substantial understatement penalty as potential alternative penalties to the 40 percent penalty. *Id.* at IRS000016. Watson's immediate supervisor, Supervisory Appeals Officer Mark C. Pettigrew, approved the Appeals Memo in writing on July 25, 2014. *Id.* at IRS000001.

Watson prepared the Notice of Final Partnership Administrative Adjustment (the "FPAA") on or about November 10, 2014. *See* Declaration of Mark C. Pettigrew, dated December 22, 2016 (the "Pettigrew Decl."), Ex. A. The FPAA explained that the IRS had reduced Partita's claimed 2008 deduction for a non-cash charitable contribution deduction by $4,186,000 because (i) the donation of the Easement did not satisfy all of the requirements of 26 U.S.C. § 170; and (ii) "it has not been established that the value of the contributed property interest was decreased by $4,186,000.00, as claimed on the 2008 return." *Id.* at IRS000423.

The FPAA also explained that the IRS had "determined that any underpayment of tax resulting from the disallowance of the partnership item of the contribution of the conservation

easement is attributable to a gross valuation misstatement." *Id.* Accordingly, the FPAA stated that a 40 percent accuracy-related penalty was being imposed at the partner level. *Id.*

The FPAA also asserted three grounds for a 20 percent penalty under section 6662. *See id.* Specifically, the FPAA asserted the negligence/disregard penalty and the substantial understatement penalty discussed above as well as—for the first time—the penalty for "[a]ny substantial valuation misstatement" pursuant to sections 6662(a), (b)(3), (e) (the "substantial valuation misstatement" penalty). *Id.* The FPAA thus constitutes the first determination that the substantial valuation misstatement penalty could be asserted.

The FPAA was signed and approved by Watson's immediate supervisor, Pettigrew, on behalf of the IRS Commissioner, on November 10, 2014. *See* Pettigrew Decl. ¶ 3 & Ex. A at IRS000418. At the time the FPAA was issued, none of the penalties had yet been assessed.

**C.     The Revised Civil Penalty Approval Form and Assessment of the Gross Valuation Misstatement Penalty**

On May 5, 2016, Montgomery completed a Civil Penalty Approval Form restating his determination that it would be appropriate for IRS to assert the gross valuation misstatement penalty against Partita under Section 6662(h). *See* ECF No. 76-5 (the "2016 Civil Penalty Approval Form"). Montgomery also stated that, in the alternative, the three 20 percent penalties applied. *Id.* Montgomery's Group Manager, Childers, approved the 2016 Civil Penalty Approval Form on or about May 5, 2016. *Id.*

The IRS subsequently assessed a 40 percent gross valuation misstatement penalty against the individual Partita partners. For example, Denise Jo Levy, the partner who brought this action, was assessed the 40 percent penalty on May 9, 2016. *See, e.g.*, Declaration of Michael J. Byars dated December 23, 2016 (the "Byars Decl."), Ex. A.

The IRS has not assessed any of the alternative 20 percent penalties at this time. *See id.*

## LEGAL STANDARDS

Summary judgment "is appropriate when, having resolved all ambiguities and permissible factual inferences in favor of the party against whom summary judgment is sought, there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law." *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 273 (2d Cir. 2015). "A genuine issue of material fact exists if the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (internal quotation marks omitted).

In interpreting a statute, the Court must "begin with the plain language, giving all undefined terms their ordinary meaning" while "attempt[ing] to ascertain how a reasonable reader would understand the statutory text, considered as a whole." *Deutche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015) (internal quotation marks omitted). "In the event that the text of a statute is not clear, a court interpreting the statute may consult the legislative history to discern the legislative purpose as revealed by the history of the statute." *United States v. DiCristina*, 726 F.3d 92, 96-97 (2d Cir. 2013).

## ARGUMENT

### I.   THE COURT'S DISALLOWANCE OF PARTITA'S CLAIMED DEDUCTION DOES NOT PRECLUDE THE IMPOSITION OF A PENALTY FOR PARTITA'S VALUATION MISSTATEMENT

### A.   The Plain Language of the Internal Revenue Code's Valuation Misstatement Penalty Provisions Permits the Imposition of Such Penalties Here

#### 1.   The Text and Structure of Section 6662

Two types of valuation misstatement penalties appear in section 6662 of the Internal Revenue Code, which is entitled "Imposition of accuracy-related penalty on underpayments." 26

U.S.C. § 6662. Subsection (a) of that provision establishes a 20 percent accuracy-related penalty

for various types of underpayments described in the subsections that follow:

> **(a) Imposition of penalty.**--If this section applies to any portion of an
> underpayment of tax required to be shown on a return, there shall be added to
> the tax an amount equal to 20 percent of the portion of the underpayment to
> which this section applies.

26 U.S.C. § 6662(a). Next, subsection (b) begins with prefatory language providing that a 20

percent penalty applies "to the portion of any underpayment which is attributable to" any of eight

enumerated bases, including "[a]ny substantial valuation misstatement under chapter 1." *Id.*

§ 6662(b)(3). This latter term is defined in subsection (e), which states, in relevant part, that a

"substantial valuation misstatement" has occurred where "the value of any property . . . claimed

on any return of tax imposed by chapter 1 is 150 percent or more of the amount determined to be

the correct amount of such valuation . . . ." *Id.* § 6662(e)(1)(A).

Subsection (h) amends the 20 percent penalty provisions set forth in subsection (b) to

increase the penalty to 40 percent in cases where the "underpayment . . . is attributable to one or

more gross valuation misstatements." *Id.* § 6662(h)(1). The specific thresholds establishing when

the enhanced 40 percent penalty applies are then provided in subsection (h)(2) in the form of

specific phrases to be substituted in the earlier subsections dealing with the substantial valuation

misstatement penalty. *Id.* § 6662(h)(2). As relevant here, subsection (h)(2)(A) defines a gross

valuation misstatement to be "any substantial valuation misstatement . . . as determined under

subsection (e)" – but with subsection (e)'s phrase "150 percent" replaced by "200 percent." *Id.*

§ 6662(h)(2)(A)(i). Reading the relevant provisions as a whole, the statute provides for a gross

valuation misstatement penalty of 40 percent to apply to a misstatement of "200 percent" "or

more of the amount determined to be the correct amount of such valuation." *Id.*

§§ 6662(h)(2)(A)(i), (e)(1)(A).[1]

### 2.    The Plain Language of Section 6662 Supports the Imposition of Penalties

The Court's interpretation of section 6662 must begin with its plain language. *See, e.g.*, *Deutche Bank*, 810 F.3d at 868. Specifically at issue here is the meaning of the statutory phrase "is attributable to" in subsection (b)'s prefatory language that precedes the enumerated bases for the 20 percent penalty. Although subsection (h) does not itself contain the phrase "is attributable to," that phrase nonetheless is applicable to the 40 percent penalty because the statutory structure described above incorporates the operative portions of subsection (b), including its prefatory language. Thus, with respect to either the substantial valuation misstatement penalty or the gross valuation misstatement penalty, such penalty is applicable to the portion of the understatement that "is attributable to" a misstatement of value meeting the specified threshold percentage. *Id.* §§ 6662(e)(1)(A), 6662(h)(2)(A)(i).[2]

As the Second Circuit has noted in a case involving the applicability of a similar, but now repealed, tax penalty provision, "[t]he ordinary, dictionary meaning of 'attributable' is 'capable of being attributed.'" *Irom*, 866 F.2d at 547 (citing Webster's Third New International Dictionary 141 (1976 ed.)). Thus, under a plain-language interpretation of section 6662(b), a

---

[1] Congress lowered the thresholds for substantial and gross valuation misstatement penalties (from 200 percent to 150 percent, and from 400 percent to 200 percent, respectively) in the Pension Protection Act of 2006. *See* Pub. L. No. 109-280, § 1219, 120 Stat. 780, 1083 (2006) (the "PPA"). As noted in the Government's motion for partial summary judgment, *see* ECF No. 42, at 4-6, the PPA was enacted following congressional hearings regarding abuses of the tax deduction for historic preservation easements, and included changes to 26 U.S.C. § 170(h) that were aimed at ending the abusive practice of "overvalu[ing]" easement deductions that "cede[d] very little of value to the exempt organization." H.R. Rep. 109-736 at 78 (2006).

[2] Partita agrees that the interpretation of the statutory phrase "attributable to" is key to the availability of either of the valuation misstatement penalties. *See* ECF No. 76, at 7.

valuation misstatement penalty can be imposed, notwithstanding the Court's ruling on the Government's partial summary judgment motion, if Partita's understatement of tax *is capable of* being attributed to Partita's overstatement of the value of its donation by the requisite percentage amount. The phrase "is attributable to" thus indicates that Congress did not intend to preclude a court from applying an accuracy-related penalty for an act or omission by the taxpayer that was not the basis for the court's prior disallowance of a deduction. Put another way, Congress's use of "is attributable to" indicates that Congress intended to penalize certain taxpayer behavior relating to an improper deduction beyond merely disallowing that deduction, without regard to the order in which a court adjudicates (or is asked to adjudicate) multiple bases for a deduction to be improper—some of which might be determined as a matter of law prior to trial, and some of which might not be determinable until disputes of fact are resolved at trial.

Partita does not expressly advance its own plain-language analysis of section 6662(b)'s text in its opening brief, but appears to take the position that the statutory phrase "is attributable to" means "was attributed to"—in other words, according to Partita, section 6662(b) permits a penalty only if the underpayment was determined to be caused by a valuation misstatement in a singular judicial ruling regarding the cause(s) of the underpayment, all other possible causes for the underpayment apparently being deemed rejected even if not presented to, or considered by, the Court. *See, e.g.*, ECF No. 76, at 7 (arguing that the "Court has already determined that any underpayment of tax is not 'attributable to' a valuation misstatement" because it granted the Government's motion for partial summary judgment "on grounds unrelated to the value of the contributed easement").[3]

---

[3] Partita's description of the Court's ruling is incorrect. The Court ruled only that the Easement, by its plain terms, did not meet the requirements for a tax deduction set forth in 26 U.S.C. § 170(h). *See* ECF No. 70. The Court did not rule on whether Partita's underpayment of tax was otherwise improper (no other reasons for the underpayment being before the Court at that time).

Partita's reading is not supported by the text of the statute. Subsection (b)'s prefatory language is in the present tense and speaks to capability, not to the procedural history of the case: a valuation misstatement penalty is available if the underpayment "*is* attribut*able*" to a valuation misstatement. *Id.* (emphases added). Subsection (b) thus asks whether the underpayment *can* be the result of one of the enumerated items (including a valuation misstatement), not whether it was determined to be the result of any such item in the earliest such determination in the litigation. Contrary to Partita's argument, nowhere does the statute expressly limit the Government (or the Court) to a single adjudication of all bases for an underpayment. *See* 26 U.S.C. § 6662. The statutory language provides no basis in the text to infer such a limitation, nor would it be proper to draw such an inference in light of the plain meaning of the words actually chosen by Congress. The statutory text is thus broader than Partita's apparent interpretation.

**B.     The Second Circuit's *Irom* Decision Supports the Government's Plain-Language Interpretation of Section 6662(b)**

In *Irom*, a case involving a similarly worded penalty provision (now repealed),[4] the Second Circuit employed the exact same approach as the Government advances here to hold that the penalty remained available, notwithstanding a lower court's prior disallowance of a deduction on a different ground. *See* 866 F.2d at 546. Specifically, the tax court in *Irom* had issued a ruling on summary judgment that upheld the Commissioner's finding of a deficiency because the taxpayer had failed to satisfy regulatory requirements for deducting advanced

---

[4] *Irom* concerned the former penalty for "any substantial underpayment *attributable to* tax motivated transactions," which the statute defined as "any underpayment of taxes imposed by subtitle A for any taxable year which *is attributable to* 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $ 1,000." 26 U.S.C. § 6621(c)(1), (2) (1986) ("former section 6621(c)") (emphases added), *repealed by* Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 7721(b), 103 Stat. 2106, 2399. The former provision then listed five types of tax-motivated transactions for which an additional interest penalty could be assessed, including (as relevant to the *Irom* case) a deduction for a loss in excess of the amount the taxpayer actually had at risk. *Irom*, 866 F.2d at 546.

minimum annual royalty payments. *Id.* at 546. The Commissioner also separately maintained that the taxpayer was liable for an "additional interest penalt[y]" because the underpayment was "'*attributable to* tax motivated transactions,'" without asserting this ground as a separate basis to uphold the deficiency finding. *Id.* (quoting 26 U.S.C. § 6621(c)(1) (1986)) (emphasis added). Thus, the sole basis on which the Commissioner had sought summary judgment on the issue of the deficiency was one that did not provide for an additional interest penalty. *Id.* The tax court upheld the disallowance on the basis of the taxpayer's noncompliance with the royalty payment regulation, but it declined to consider imposing a possible additional interest penalty, reasoning that its disallowance ruling had been limited to the advanced royalties issue and did not determine that the transaction was tax-motivated. *Id.*

The Second Circuit vacated the tax court's ruling that the penalty was not applicable. *Id.* The panel reasoned that the term "attributable to" in former section 6621(c) should be given its ordinary meaning, "capable of being attributed," as noted. *Id.* It explained that the statute's use of that term reflected Congress's intent not "to preclude additional interest for deficiencies that are *capable* of being attributed to tax-motivated transactions simply because the Commissioner seeks summary judgment for the deficiency on other grounds." *Id.* It also rejected the argument that it might be more efficient to require the Commissioner to seek disallowance on all available grounds, because the Internal Revenue Code contained no such requirement. *Id.* at 546-47.

The Second Circuit's holding and reasoning in *Irom* are consistent with basic principles of statutory interpretation and support the plain-language interpretation of section 6662(b) advanced by the Government here. Just as a plain-language interpretation of the term "attributable to" in former section 6621(c) led the Second Circuit to hold that the penalty provision was applicable in that case, notwithstanding the tax court's prior disallowance of the claimed deduction on summary judgment, *see* 866 F.2d at 546, section 6662(b) similarly permits

- 10 -

this Court now to determine at trial whether an accuracy-related penalty applies, notwithstanding its disallowance of the deduction in its grant of partial summary judgment. And, just as the *Irom* panel found no contrary indication in former section 6621(c) or elsewhere in the Internal Revenue Code, *see id.* at 547, there is no indication in section 6662 or elsewhere in the Internal Revenue Code that Congress intended to accord a different meaning to "is attributable to."

Partita's opening brief overlooks the Second Circuit's plain-language interpretation of the words "attributable to" and the centrality of that analysis to the holding in *Irom*. *See* ECF No. 76 at 8, 9, 19 n.12. Instead, Partita misleadingly asserts that *Irom* "expressly appl[ied]" the holding of the Fifth Circuit's decision in *Todd*, which concerned a valuation misstatement penalty provision that also contained the phrase "attributable to," 862 F.2d at 541. ECF No. 76 at 8. Contrary to Partita's characterization, however, the Second Circuit expressly noted that *Todd* was "inapposite" because it dealt with a factual scenario different from that in *Irom*—namely, *Todd* involved two unrelated grounds for the deficiency, but grounds for the deficiency in *Irom* were "inseparable" from each other. 866 F.2d at 547. *Irom*'s passing reference to *Todd* in dictum does not diminish the force of the *Irom* panel's statutory analysis. Moreover, as discussed below, the Supreme Court abrogated the *Todd* decision (as well as a similar line of cases in the Ninth Circuit on which Partita also relies) in *Woods* – including by expressly rejecting the Fifth Circuit's basis for its interpretation of the phrase "attributable to" in *Todd*. *See* 134 S. Ct. at 568; *see also Chemtech Royalty Assocs., L.P. v. United States*, 823 F.3d 282, 286 (5th Cir. 2016) (recognizing that *Woods* "effectively overruled *Todd* and *Heasley* [*v. Comm'r*, 902 F.2d 380 (5th Cir. 1990)]"), *petition for cert. filed*, 2016 WL 4983172 (U.S. Sept. 14, 2016) (No. 16-347).[5]

---

[5] The petition for certiorari in *Chemtech* does not take issue with the Fifth Circuit's characterization of *Woods* as having overruled *Todd* and *Heasley*. *See* 2016 WL 4983172.

### C.    The Case Law Supports the Government's Interpretation of Section 6662(b)

*Woods* resolved a circuit split regarding the applicability of section 6662's valuation misstatement penalties. *See Woods*, 134 S. Ct. at 567. As the circuits' pre-*Woods* case law is key to understanding the impact of *Woods*, the Government begins by discussing these cases.

### 1.    Pre-*Woods* Case Law

The circuit split had its origins in the Fifth Circuit's now-abrogated decision in *Todd*. The penalty provision at issue in *Todd* was a predecessor to the valuation misstatement penalty provisions now found in section 6662 and also contained the key phrase "is attributable to." 26 U.S.C. § 6659(a) (1986) ("former section 6659(a)").[6] At issue in *Todd* was whether this penalty provision could be applied to claimed deductions relating to the taxpayers' investment in certain shipping containers. 862 F.2d at 540-41. Because the taxpayers had claimed deductions in tax years during which they did not yet control the containers, the IRS disallowed these deductions in full. *Id.* at 541. The IRS also assessed a valuation misstatement penalty under former section 6659(a) because the value claimed was five times the amount actually paid. *Id.* at 541.

The Fifth Circuit rejected the IRS's imposition of penalties pursuant to former section 6659(a). *Id.* at 543. The panel began its analysis by looking at the statutory text, which it found ambiguous. *Id.* at 541-42. The panel rejected the Government's argument that the statute's phrase "is attributable to" meant "capable of being attributed," reasoning that this would "merely substitute[] one ambiguity for another." 862 F.2d at 542. This was because, in the panel's view, a

---

[6] Former section 6659(a) stated, in relevant part, that "[i]f . . . an individual has an underpayment of the tax imposed by chapter 1 for the taxable year which *is attributable to* a valuation overstatement, then there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributable." 26 U.S.C. § 6659(a) (1986) (emphasis added), *repealed by* Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 7721(c)(2), 103 Stat. 2106.

deficiency found to have resulted from a total disallowance of a deduction could be considered as no longer "capable" of being attributed to another cause. *See id.*

Having found no guidance in the statutory text, the *Todd* panel proceeded to consider legislative intent. The panel first looked to a congressional committee report that explained that former section 6659(a)'s valuation misstatement penalty was intended to discourage taxpayers from inflating the value of their property on their tax returns in the hope that (if caught) they could then reach a favorable compromise with the IRS by "dividing the difference," but the panel did not rely on this report because it contained no method for calculating the amount of the penalty. *Id.* (citing H.R. Rep. 97-201 at 243, *available at* 1981 WL 404302, at \*82).

Instead, the panel seized on a passage about former section 6659(a) in a report by the staff of the Joint Committee on Taxation. *Id.* at 542-43 (quoting Staff of the Joint Committee on Taxation, *General Explanation of the Economic Recovery Tax Act of 1981*, at 333 (Comm. Print 1981) (the "Blue Book")). This passage provided what the *Todd* panel (mis)interpreted to be Congress's intended formula for determining the amount of the penalty in such cases: a court should first calculate the taxpayer's actual tax liability (after making the adjustments due to the disallowed deductions), and then subtract the taxpayer's tax liability after taking into account the valuation overstatement. *Id.* at 542-43. In the circumstances in *Todd*, the result of this formula was a penalty amount of zero—*i.e.*, the taxpayers' actual tax liability remained the same regardless of the valuation they had placed on the operation of their containers (because the losses already had been disallowed in full), and thus there was no additional change in tax liability to which to apply former section 6659(a)'s overvaluation penalty. *Id.* at 543.[7]

---

[7] As discussed below, the *Todd* panel's interpretation of the Blue Book was erroneous because the "formula" did not describe a situation where a deficiency was attributed to a single transaction that was improper for more than one reason. Rather, this Blue Book passage explained that, "when the IRS disallows two different deductions, but only one disallowance is

The Ninth Circuit adopted the *Todd* rule to preclude application of former section 6659(a)'s valuation misstatement penalty in another case also arising from the shipping-container investment scheme. *See Gainer v. Comm'r*, 893 F.2d 225, 227-28 (1990) (finding the statutory text ambiguous and relying on the Blue Book formula cited in *Todd*). The Fifth Circuit subsequently extended the *Todd* rule without additional statutory analysis to preclude application of the valuation misstatement penalty in a case where the deficiency resulted from a finding that certain transactions should be disregarded for tax purposes because they lacked economic purpose. *See Heasley v. Comm'r*, 902 F.2d 380, 382-83 (5th Cir. 1990). Taking *Todd*'s interpretation of former section 6659(a) to its logical conclusion, the *Heasley* panel held that "[w]henever the I.R.S. totally disallows a deduction or credit, the I.R.S. may not penalize the taxpayer for a valuation overstatement included in that deduction or credit." *Id.* at 383.[8]

Shortly after the Fifth Circuit decided *Heasley*, the Second Circuit rejected that interpretation of former section 6659(a) in *Gilman v. Commissioner*, 933 F.2d 143 (2d Cir. 1991). Like *Heasley*, *Gilman* involved the IRS's application of the valuation misstatement penalty in the context of tax deductions that were disallowed because the underlying transaction was without economic substance. *Id.* at 147. Contrary to *Heasley*, however, *Gilman* upheld the application of the penalty in such circumstances, holding that "'when an underpayment stems from disallowed depreciation deductions or investment credits due to lack of economic substance, the deficiency is attributable to overstatement of value, and subject to the penalty under [former] section 6659.'" *Id.* at 151 (quoting *Massengill v. Comm'r*, 876 F.2d 616, 619-20

---

based on a valuation misstatement, the valuation misstatement penalty should apply only to the deduction taken on the valuation misstatement, not the other deduction, which is unrelated to valuation misstatement." *Alpha I, L.P. v. United States*, 682 F.3d 1009, 1029 (Fed. Cir. 2012).

[8] For convenience, the Government refers to the approach taken by the Fifth and Ninth Circuits prior to *Woods* as the *Todd/Heasley* rule.

(8th Cir. 1989)) (alterations omitted). Put another way, "[t]he lack of economic substance was due in part to the overvaluation, and thus the underpayment was attributable to the valuation overstatement." *Gilman*, 933 F.2d at 151.

Other courts of appeals subsequently agreed with *Gilman* and *Massengill* that, contrary to the *Todd/Heasley* rule, a valuation misstatement penalty could be applied in such cases because a disallowance of a deduction due to lack of economic substance was sufficiently related to an overvaluation to be "attributable to" a valuation misstatement.[9] In *Alpha*, another economic substance case, the Federal Circuit rejected the *Todd/Heasley* rule on the broader reasoning "that an underpayment of tax may be attributable to a valuation misstatement for purposes of the statute even when the IRS asserts both a valuation misstatement ground and a non-valuation-misstatement ground for the same adjustment." 682 F.3d at 1030.

The courts' disagreement over whether a valuation misstatement penalty was available in cases involving transactions lacking economic substance led to the Supreme Court's grant of certiorari in *Woods*. Even before *Woods*, however, both the Fifth and Ninth Circuits began to acknowledge flaws underlying the *Todd/Heasley* rule, although both courts continued to follow that rule as a matter of binding circuit precedent. *See Keller v. Comm'r*, 556 F.3d 1056, 1061

---

[9] *See, e.g.*, *Gustashaw v. Comm'r*, 696 F.3d 1124, 1136 (11th Cir. 2012) (noting that applying the penalty in cases involving transactions lacking economic substance is appropriate because "the abusive tax shelter is built upon the basis misstatement, and the transaction's lack of economic substance is directly attributable to that misstatement"); *Fidelity Int'l Currency Advisor A Fund, LLC v. United States*, 661 F.3d 667, 672-73 (1st Cir. 2011) (basis misstatement and valuation misstatement "stemm[ed] from the same central finding that the transactions lacked economic purpose and w[ere] designed purely for tax avoidance"); *Merino v. Comm'r*, 196 F.3d 147, 158 (3d Cir. 1999) ("[T]he overvaluation . . . is an essential component of the tax avoidance scheme."); *Zfass v. Comm'r*, 118 F.3d 184, 191 (4th Cir. 1997) ("'[W]hen a transaction lacks economic substance, the correct basis is zero; any amount claimed is a valuation overstatement.'"); *Illes v. Comm'r*, 982 F.2d 163, 167 (6th Cir. 1992) (holding that a valuation misstatement penalty was appropriate because the "entire artifice of the [tax] shelter was constructed on the overvaluation of its assets"). For ease of reference, the Government refers to the cases rejecting the *Todd/Heasley* rule as the *Massengill/Gilman* line of cases.

(9th Cir. 2009); *Bemont Invs., LLC v. United States*, 679 F.3d 339, 354-55 (5th Cir. 2012)

(Prado, J., concurring) (noting "that the *Todd/Heasley* rule may be misguided"). Notably, all

three judges on the *Bemont* panel joined the concurrence in that case, which explained in detail

how *Todd*'s interpretation of former section 6659(a) was premised on a misreading of the key

portion of the Blue Book. *Bemont*, 679 F.3d 351-52 (Prado, J., concurring).

### 2. The Supreme Court's Ruling in *Woods*

Like *Heasley*, *Massengill*, and *Gilman*, the *Woods* case involved transactions that were

found to lack economic substance, resulting in the disallowance of related tax deductions. 134

S. Ct. at 560-61. Applying the *Todd/Heasley* rule, the Fifth Circuit had held that no valuation

misstatement penalty could be applied. *Woods v. United States*, 471 F. App'x 320 (5th Cir.

2012). The Supreme Court reversed, holding that the penalty was applicable in cases involving

transactions subsequently disregarded for lack of economic substance. 134 S. Ct. at 560.

At least three aspects of the Supreme Court's *Woods* decision support the Government's

plain-language approach to interpreting section 6662 here. First, the Supreme Court expressly

interpreted section 6662 according to its plain language. *See id.* at 565-66 ("The penalty's plain

language makes it applicable here"). Second, *Woods* was narrowly focused on what the rule

should be for cases involving transactions lacking economic substance, and did not discuss other

types of disallowed deductions to which the valuation misstatement penalties would apply. *Id.* at

567-68 (quoting *Bemont*, 679 F.3d at 354 (Prado, J., concurring)). Third, even though it did not

discuss other types of deductions, the Court expressly faulted the *Todd* panel's Blue Book-based

interpretation, including because it relied on a passage that addressed a completely different

situation involving "two separate, non-overlapping underpayments, only one of which is

attributable to a valuation misstatement." *Id.* at 568 (recognizing that the Fifth and Ninth Circuits

had "voiced doubts" about the *Todd/Heasley* rule).

Interpreting section 6662 by according the phrase "is attributable to" its natural meaning, just as the Second Circuit did with respect to the tax penalty statute at issue in *Irom*, is fully consistent with *Woods*. *Woods* left standing none of the reasoning in the *Todd/Heasley* line of cases (whether in the Fifth or Ninth Circuits). Thus, contrary to Partita's argument, *Todd* plainly does not "govern[] in this case." ECF No. 76 at 16. Nor are "the decisions of the Fifth Circuit in *Todd* and of the Ninth Circuit in *Gainer* . . . directly on point," *id.* at 10.

Nor does the fact that the *Massengill/Gilman* line of cases all concluded that the valuation misstatement penalty could be applied in a specific factual scenario—*i.e.*, to cases involving transactions lacking economic substance—require (or even suggest) that the penalty's applicability was limited to those types of cases. *See* ECF No. 76 at 10-19. The cases decided prior to *Woods* were considered against the backdrop of the *Todd/Heasley* rule, and the fact that each of these courts interpreted the valuation misstatement provision in the context of the case before it is hardly remarkable.[10] *See id.* at 13-14, 17 n.9. With the exception of the Federal Circuit's broader reasoning in *Alpha*, none of these cases purported to determine the extent to which the valuation misstatement penalty would apply outside of the context of transactions lacking economic substance—rather, they represent one possible application of the penalty. *See, e.g.*, *Gilman*, 933 F.2d at 152 ("[T]his interpretation of underpayment 'attributable to a valuation misstatement' represents a less common application of section 6659."). Similarly, the post-*Woods* cases cited by Partita do not speak to the proper extent of the penalty's applicability. *See* ECF No. 76 at 17-19. The Federal Circuit concluded in *Alpha* that the valuation misstatement penalty provision more broadly is applicable to deductions that are disallowed on a valuation misstatement ground and a non-valuation misstatement ground. 682 F.3d at 1030. The case law

---

[10] *See, e.g.*, the cases cited in footnote 9 above. Nor is it remarkable that, prior to *Woods*, IRS documents include discussion of the *Todd/Heasley* rule. *See* ECF Nos. 76-7, 76-8.

dealing with transactions lacking economic substance thus hardly "forecloses" the application of a valuation misstatement penalty here, contrary to Partita's assertion. *See* ECF No. 76, at 11.

### D.   The Government's Interpretation of Section 6662(b) Is Consistent With Congressional Purpose

For the reasons stated, section 6662 is not ambiguous. But even if it were, the legislative history and purpose for the valuation misstatement penalty support the Government's interpretation. *See, e.g.*, *DiCristina*, 726 F.3d at 96 (permitting a court to "consult the legislative history to discern the legislative purpose as revealed by the history of the statute" when the statutory text is ambiguous); *see also Alpha*, 682 F.3d at 1030 ("When considering whether such a 'dual-cause' scenario falls within a statute's reach, courts consider the context and policy underlying the statute.") (citing, *inter alia*, *Fidelity*, 661 F.3d at 673). Numerous courts have recognized that Congress intended for the valuation misstatement penalty to remain available even after a deduction is fully disallowed as a matter of law on another ground.

To begin with, the Government's interpretation is consistent with the 1981 House Report's explanation that former section 6659(a)'s valuation misstatement penalty was intended to discourage taxpayers who claimed inflated property values in the hope that they would go undetected or, if detected, would create a potentially advantageous negotiating position. *See* H.R. Rep. 97-201 at 243, *available at* 1981 WL 404302, at *82; *see also Fidelity*, 661 F.3d at 672 ("Congress singled out for stiff penalties a misstated basis or value that improperly reduces taxes; the apparent reason is that the misstated figures directly impair tax collections and prove difficult to resolve (and presumably are easy to fabricate)." (citing, *inter alia*, H.R. Rep. 97-201 at 243). This intent was carried over to the successor valuation misstatement penalties in section 6662. *See, e.g.*, *Clearmeadow Invs., LLC v. United States*, 87 Fed. Cl. 509, 530-31 & n.27 (2009) (citing additional legislative history reflecting that section 6662 was intended to continue the

goals of its predecessor statutes, including former section 6659(a) as well as a different penalty provision that was aimed at "tax shelter promotions that exploited overvaluation").

Courts also have recognized the potential for perverse results in charitable-deduction cases. Specifically, under Partita's view, the IRS would be forced to forgo non-valuation-related arguments for disallowing a deduction in order to preserve the ability to impose a valuation misstatement penalty. Partita's view also would reward less-compliant taxpayers: taxpayers who complied with every aspect of 26 U.S.C. § 170, but nevertheless overvalued their donation, would be subject to the penalty, whereas taxpayers who failed to comply with the terms of section 170, in addition to overvaluing the donation, would evade the penalty if the court were to disallow the deduction on a technical section 170 ground. These results are not consistent with congressional intent. *See Fidelity*, 661 F.3d at 673 ("Indeed, one might think that it would be perverse to allow the taxpayer to avoid a penalty otherwise applicable to his conduct on the ground that the taxpayer had also engaged in additional violations that would support disallowance of the claimed losses."); *Bemont*, 679 F.3d at 355 (Prado, J., concurring) ("Amplifying the egregiousness of the scheme – to the point where the transaction is an utter sham – could thus, perversely, shield the taxpayer from liability for overvaluation."); *Gilman*, 933 F.2d at 150 ("If the Commissioner is more successful and persuades the Court to disregard not only the nonrecourse notes but the entirety of the purchase price, thereby lowering the 'price' not only to fair market value but all the way to zero, should the Commissioner's success have the perverse effect of sparing the taxpayer the overvaluation penalty?"); *id.* at 152 (noting Congress's intent to penalize transactions lacking economic substance). Even the Ninth Circuit's *Keller* opinion noted the "anomalous result [of] allowing a party to avoid tax penalties by engaging in behavior one might suppose would implicate more tax penalties, not fewer." 556 F.3d at 1061 (but following the *Todd/Heasley* rule as a matter of circuit precedent).

- 19 -

The Government's plain-language interpretation of section 6662 is thus consistent with Congress's intent in enacting the valuation misstatement penalty. The application of the valuation misstatement penalties here also is consistent with the goals of the PPA, which strengthened penalties for valuation misstatements generally, and also tightened restrictions on deductions for donating preservation easements to prevent taxpayers from "overvalu[ing] their easement donations" and claiming "a substantial tax deduction" when they had "cede[d] very little of value." H.R. Rep. 109-736 at 78; *see also* ECF No. 42 at 4-6. Nothing in the legislative history suggests that Congress intended to exempt from the penalty taxpayers who overvalue easement donations that also fail to meet the requirements of section 170. Partita not only claimed a legally flawed deduction, but also vastly overstated the Easement's value, as will be shown at trial. In such circumstances, it is consistent with congressional intent not only to disallow the deduction, but also to impose a valuation misstatement penalty.

Partita does not point to policy reasons supporting its own reading of section 6662(b). The *Todd* panel, however, posited that the valuation misstatement provision might indicate Congress's intent to ease the burden on the tax court by foreclosing complicated valuation adjudications or to moderate the penalty to avoid being "too draconian." 862 F.2d at 544 & n.15. As the *Todd* panel gleaned these purposes only by inference from its mistaken reading of the Blue Book and cited no other source reflecting congressional intent, its assessment of Congress's intent merits no weight. *See, e.g.*, *Clearmeadow*, 87 Fed. Cl. at 534 ("[I]t is particularly dubious that Congress intended to confer . . . largesse upon participants in tax shelters, whose intricate plans for tax avoidance often run afoul of the economic substance doctrine."). Indeed, even the *Todd* panel admitted that it was unsure of congressional intent: "We cannot say for certain why Congress chose this test . . . ." 862 F.2d at 544.

## II.   THE IRS SATISFIED SECTION 6751(B), WHICH DOES NOT REQUIRE SUPERVISORY APPROVAL UNTIL A PENALTY IS ASSESSED

Partita next argues that the IRS cannot assert alternative penalties for negligence/disregard and substantial valuation misstatement because the IRS did not obtain the approval required by 26 U.S.C. § 6751(b). Again, Partita is incorrect. By its plain language, section 6751(b) requires only that approval precede "assessment." Here, the IRS has already obtained approval, and it has not yet "assessed" the penalties it asserted in the alternative.

### A.   Section 6751(b) Requires Only That Supervisory Approval Precede "Assessment"

Under 26 U.S.C. § 6751(b), "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." "In . . . tax law generally, an assessment is closely tied to the collection of a tax, *i.e.*, the assessment is the official recording of liability that triggers levy and collection efforts." *Hibbs*, 542 U.S. at 101; *see also Graev*, 2016 WL 6996650, at *10. In proceedings under the Tax Equity and Fiscal Responsibility Act ("TEFRA"), the IRS cannot assess a deficiency until 150 days after the mailing of the FPAA or, "if a proceeding is begun in the Tax Court under section 6226 during such 150-day period," after "the decision of the court in such proceeding has become final." 26 U.S.C. § 6225(a).

Section 6751(b) "imposes no deadline for the requisite approval before the date of assessment." *Graev*, 2016 WL 6996650, at *12. As the Tax Court explained in *Graev*, in providing for approval by "such higher level official as the Secretary may designate," section 6751(b) "clearly contemplates that the written approval is not required 'by the time of the initial determination' . . . or at any other particular time before the assessment is made." *Id.* The Tax Court found further support for its interpretation in section 6571(b)'s effective date, *i.e.*,

December 31, 2000. *Id.* at *13. Because penalties *assessed* after that date might have been first *asserted* "before the effective date—or even before the enactment—of section 6751(b)," it would make no sense to interpret that provision to refer to the initial assertion of a penalty—doing so could require the IRS retroactively "to obtain written approval as of a time before the requirement had even come into existence." *Id.* at *13-*14. Interpreting section 6751(b)'s reference to assessment in accordance with that term's plain meaning avoids such absurd results.

Thus, the IRS satisfies section 6751(b) whenever it obtains appropriate written approval of the initial determination to assess a penalty prior to making an assessment, *i.e.*, prior to making "the official recording of liability that triggers levy and collection efforts." *Hibbs*, 542 U.S. at 101. A challenge to a penalty under section 6751(b) "is not ripe for review . . . until the penalty of which [the taxpayers] complain has been 'assessed' in violation of the supervisory-approval requirement." *Graev*, 2016 WL 6996650, at *10.

Partita raises three arguments against this plain-language interpretation. First, it contends that, although Congress used the word "assessment," that "word is clearly used in the sense of an 'assertion' early in the examination process, rather than as a reference to a formal recording of liability at the process's conclusion." ECF No. 76 at 23. This atextual argument violates multiple canons of statutory interpretation. To begin with, the Court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). Because "assessment is the official recording of liability that triggers levy and collection efforts," *Hibbs*, 542 U.S. at 101, the Court should presume that Congress meant to refer to that "official recording," rather than to any earlier stage of the examination process, *Arlington Cent.*, 548 U.S. at 296. The Court also must presume "that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Under Partita's view, "assessment" would have different, and contradictory,

meanings depending on where it appears in the Tax Code. Under Partita's construction of section 6751(b), an "assessment" occurs "early in the examination process," *see* ECF No. 76 at 23, yet legally an assessment cannot occur until the examination process under section 6225(a) has ended. Thus, the Court should reject Partita's interpretation of "assessment" in section 6751(b), and instead give that term the same plain meaning it has throughout the Code.

Partita next argues that the Internal Revenue Manual indicates that the IRS, as a matter of administrative practice, requires its examiners to obtain supervisory approval before asserting penalties. *Graev* rejects this precise argument. *See* 2016 WL 6996650, at *12. Specifically, it reasons that the Internal Revenue Manual's provisions "do not have the force or effect of law and do not create enforceable rights for taxpayers." *Id.* (internal quotation marks and citations omitted). The IRS's "administrative procedures, although seemingly salutary, are immaterial to [the] conclusion that the statute imposes no particular deadline for the IRS to secure the required written approval before a penalty is assessed." *Id.* The IRS's internal practices thus do not change the meaning of section 6751(b)'s unambiguous text. *Arlington Cent.*, 548 U.S. at 296 ("When the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

Finally, Partita argues that a failure to require supervisory approval prior to the assertion of penalties would thwart Congress's goal of ensuring that penalties were imposed only "where appropriate and not as a bargaining chip." S. Rep. No. 105-174, at 65 (1998). Once again, Partita's argument is incorrect. As a threshold matter, "[i]f a statute is clear on its face, a court is not permitted to use other interpretive tools, including legislative history, to discern the statute's meaning." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 297 (2d Cir. 2003). In any event, Partita misreads the legislative history, which explains that the provision "requires the specific approval of IRS management *to assess* all non-computer generated penalties." S. Rep. No. 105-174, at 65

(1998) (emphasis added). Thus, the legislative history, like section 6751(b)'s text, demonstrates that Congress intended to require supervisory approval before assessment.

Partita's invocation of the supposed legislative purpose is particularly misguided here. As described below, supervisors at the IRS repeatedly approved both the 40 percent penalty the IRS has now assessed and the 20 percent penalties it asserted in the alternative. *See infra* Parts II.C & II.D; *see also* ECF No. 71. Having no argument that IRS has attempted to use inappropriate penalties as a "bargaining chip," Partita instead claims that the IRS failed to specify the alternative 20 percent penalties on the correct form. Nothing in the plain language of the statute nor its legislative history indicates that Congress was concerned with such technicalities.

**B.   Partita's Challenge Under Section 6751(b) Is Not Ripe, as the Penalties It Challenges Were Asserted in the Alternative and Have Not Been Assessed**

As the IRS has not yet assessed any 20 percent penalties, Partita's challenge to those penalties under section 6751(b) is not yet ripe. On May 9, 2016, the IRS assessed the 40 percent penalty against Ms. Levy, the individual partner who initiated this lawsuit. *See* Byars Decl. Ex. A. Since accuracy-related penalties cannot be stacked, there is no reason that IRS would assess a 20 percent penalty after assessing a 40 percent penalty even if it could. *See* 26 C.F.R. § 1.6662-2(c) (prohibiting "stacking of accuracy-related penalties"). Thus, a challenge to an unassessed 20 percent penalty under section 6751(b) "is not ripe for review." *Graev*, 2016 WL 6996650, at *10. A court may never need to address the 20 percent penalty if the 40 percent penalty is upheld.

**C.   The IRS Has Satisfied Section 6751(b)'s Requirements**

Even if Partita's challenge were ripe, it would fail on the merits. As set forth above, the IRS first assessed penalties against Partita and its partners on May 9, 2016. *See* Byars Decl. Ex. A. That assessment followed the completion of a revised Civil Penalty Approval Form on May 5, 2016, which asserted both the 40% penalty for gross valuation misstatement and, in the

alternative, the 20% penalties for negligence/disregard, substantial understatement, and substantial valuation misstatement. *See* ECF No. 76-5. Because the relevant manager approved each penalty prior to any assessment, the IRS has satisfied the requirements of section 6751(b). *See Graev*, 2016 WL 6996650, at *12 ("[W]ritten approval is not required 'by the time of the initial determination' . . . or at any other particular time before the assessment is made.").

**D.      Even if the Court Accepted Partita's Interpretation of Section 6751(b), Material Issues of Fact Would Still Preclude Summary Judgment**

Even if the Court determined that section 6751(b) required supervisory approval to precede some action other than the penalty's assessment, disputed issues of material fact would still preclude summary judgment. *Savino*, 331 F.3d at 71. IRS supervisors repeatedly approved the alternative penalties. *See* ECF No. 71. On March 13, 2013, the IRS completed a Reviewers Report that discussed the assertion, in the alternative, of the 20% negligence/disregard and substantial understatement penalties. *See* ECF No. 76-3. The Reviewers Report was signed by the reviewer, her group manager, the examiner, and his group manager. *Id.* The IRS executed the Reviewers Report more than two months before it first asserted penalties in a 60 Day Letter to Partita's tax matters partner. *See* ECF No. 76-1. Partita contends that the Reviewers Report does not amount to an approval of any 20% penalties. But this is a factual, rather than legal issue, and the Government disputes Partita's parsimonious understanding of the Reviewers Report, which reduces that report to little more than an empty formality.[11] Accordingly, summary judgment would be inappropriate, as a trial is necessary to resolve the parties' genuine disputes of material fact. *Savino*, 331 F.3d at 71.

---

[11] Similarly, the IRS asserted the substantial valuation misstatement, negligence/disregard and substantial understatement penalties in the FPAA, which was approved by a supervisor prior to any assessment. *See* ECF No. 71. Partita responds to this approval with factual arguments, *see* ECF No. 76 at 22, which the Government disputes.

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiff's motion for summary

judgment and proceed to a trial regarding the appropriate penalty relating to Partita's claimed

deduction.

Dated: New York, New York
December 23, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _s/ Michael J. Byars_
CALEB HAYES-DEATS
MICHAEL J. BYARS
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2699/2793
Facsimile: (212) 637-2686/2717
E-mail: caleb.hayes-deats@usdoj.gov
          michael.byars@usdoj.gov