UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PARTITA PARTNERS LLC and DENISE JO
LEVY, a partner other than the tax matters
partner,

         Plaintiffs,        15-cv-2561 (PKC)

  -against-            MEMORANDUM
                     AND ORDER

UNITED STATES OF AMERICA,

          Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

    In 2008, plaintiff Partita Partners LLC ("Partita") claimed a federal tax deduction of $4,186,000 for the donation of a preservation easement in the façade of a building that it owns on the Upper East Side. The Italianate-style building was constructed in the 1870s, and it has been a part of the Upper East Side Historic District since 1981. Partita made its donation to the Trust for Architectural Easements, and, as part of its deed of easement, reserved 2,700 square feet for future development rights.

    The IRS disallowed the deduction in 2014. The IRS also assessed an underpayment penalty against Partita of 40 percent, asserting that Partita had made a gross valuation misstatement. In the alternative, the IRS assessed an underpayment penalty of 20 percent on grounds of negligence, substantial understatement of income tax or a substantial valuation misstatement. See 26 U.S.C. § 6662.

    Partita and one of its partners, Denise Jo Levy, commenced this action pursuant to 26 U.S.C. § 6226(b), asserting that Partita's taxes should be readjusted to recognize the

charitable deduction of the façade easement donation, and that no underpayment penalty should be imposed.

On October 25, 2016, this Court granted a motion for partial summary judgment that was filed by the United States. Partita Partners LLC v. United States, 216 F. Supp. 3d 337 (S.D.N.Y. 2016) ("Partita I"). The Court concluded that, as a matter of law, Partita's donation of the façade easement did not preserve the building's entire exterior, as required by 26 U.S.C. § 170(h)(4)(B), and that Partita therefore was ineligible for the $4,186,000 deduction that it claimed. See id. at 339-43.

The only remaining issue is plaintiffs' challenge to the underpayment penalties. At a pretrial conference of October 28, 2016, the Court granted leave to plaintiffs to move for partial summary judgment on the issue of penalties. The government argues that a trial is needed to resolve plaintiffs' challenge to the penalties.

For the reasons explained, the plaintiffs' motion for partial summary judgment is denied.

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted). It is the initial burden of the movant to come forward with evidence on each material

element of his claim or defense, demonstrating that he is entitled to relief, and the evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

DISCUSSION.

   I.   Partita's Motion for Summary Judgment Is Denied as to the Valuation Misstatement Penalties.

      A. The Penalties Established by Section 6662.

As noted, the Court has previously concluded that Partita was not eligible for a charitable deduction based on its donation of a historic preservation easement, because the donation did not preserve the entire exterior of the building, as required by the plain language of the Internal Revenue Code. Partita I, 216 F. Supp. 3d at 341-43; 26 U.S.C. § 170(h)(4)(B)(i)(I). Familiarity with Partita I is assumed.

Section 6662 of the Internal Revenue Code establishes penalties for the underpayment of taxes. It provides that "there shall be added to the tax an amount equal to 20 percent of the portion of underpayment," including when underpayment "is attributable to 1 or more of the following" specified circumstances. 26 U.S.C. § 6662(a), (b). The 20 percent penalty applies when the underpayment of taxes is caused by "[n]egligence or disregard of rules

or regulations," "[a]ny substantial understatement of income tax" or "[a]ny substantial valuation misstatement under chapter 1." 26 U.S.C. § 6662(b)(1)-(3).

In addition to a 20 percent penalty for a "substantial valuation misstatement," section 6662 also establishes a 40 percent penalty for "gross valuation misstatements." 26 U.S.C. § 6662(h). The criteria for determining a "substantial valuation misstatement" and a "gross valuation misstatement" are similar. A "substantial valuation misstatement" occurs if "the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be) . . . ." 26 U.S.C. § 6662(e)(1)(A). "The term 'gross valuation misstatements' means any substantial misstatement . . . as determined under subsection (e) by substituting in paragraph (1)(A), '200 percent' for '150 percent' . . . ." 26 U.SC. § 6662(h)(2). Thus, a "substantial valuation misstatement" occurs when the value of property claimed on a return is misstated by 150% or more than the amount determined by the IRS, and a "gross valuation misstatement" occurs when the misstatement exceeds the IRS's determined amount by 200% or more. 26 U.S.C. §§ 6662(h)(1), 6662(e)(1)(A).

B.  The IRS's Pre-Litigation Correspondence with Partita.

In a letter dated May 20, 2013, the Internal Revenue Service ("IRS") mailed a so-called "60 Day Letter" to one of Partita's partners. (Pl. 56.1 ¶ 3; Def. 56.1 Resp. ¶ 3; Levine Dec. Ex. A.) An attached IRS Form 870-PT listed Partita's proposed adjustments for the tax year ending on December 31, 2008. (Levine Dec. Ex. A.) Under heading C, labeled "Charitable contributions 50%," the IRS proposed an adjustment of $4,236,000, on a reported contribution of the same amount. (Levine Dec. Ex. A.) The IRS listed the corrected amount of charitable

contributions as "0.00." (Levine Dec. Ex. A.) Under the heading, "REMARKS," the Form 870-PT states:

> Accuracy-related penalty: It is determined that if the underpayments are not due to gross valuation misstatement, then the underpayments of tax attributable to the adjustment to charitable contributions for the tax year ended December 31, 2008 are due to negligence or disregard of rules and regulations for filing income tax returns. Consequently, the 20% addition to tax is charged on the underpayments as provided by Internal Revenue Code sections 6662(a), 662(b)(1) and 6662(c).

(Levine Dec. Ex. A.)

The IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") dated November 10, 2014. (Pl. 56.1 ¶ 4; Def. 56.1 Resp. ¶ 4.) IRS Form 886-A, titled "EXPLANATION OF ADJUSTMENTS," stated that the IRS had determined that "it has not been established that the value of the contributed property interest was decreased by $4,186,000.00 as claimed on the 2008 return." (Levine Dec. Ex. F.) It further stated:

> It is determined that any underpayment of tax resulting from the disallowance of the partnership item of the contribution of the conservation easement is attributable to a gross-valuation misstatement under Sections 6662(a), 6662(b)(3), and 6662(h) of the Internal Revenue Code. Accordingly, the accuracy-related penalty is imposed at the partner level under Section 6662(a) of the Internal Revenue Code in the amount of **forty (40) percent** of the portion of the underpayments of tax related to the partners' returns attributable to the disallowance of the charitable contribution related to the conservation easement under Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

(Levine Dec. Ex. F; emphasis in original.) The Form 886-A then stated that, in the alternative, if Partita's underpayment of taxes was not attributable to a gross valuation misstatement, then a 20 percent accuracy-related penalty was to be imposed based on: "(1) negligence or disregard of rules or regulations under Sections 6662(b)(1) and 6662(c) of the Internal Revenue Code, (2) any substantial understatement of income tax under Sections 6662(b)(2) and 6662(d) of the Internal

Revenue Code, or (3) a valuation misstatement under Sections 6662(b)(3) and 6662(e) of the Internal Revenue Code." (Levine Dec. Ex. F.)

### C. The Disallowance of the Charitable Deduction Does Not, in Itself, Preclude the Government from Imposing Valuation Misstatement Penalties.

Partita argues that, as a matter of law, it did not make a valuation misstatement when it claimed a deduction for the easement donation. Under the Internal Revenue Code, a valuation misstatement penalty "shall apply to the portion of any understatement which is attributable to" the valuation misstatement. 26 U.S.C. § 6662(b)(3), (h)(1). According to Partita, because Partita I concluded that the charitable deduction did not satisfy the criteria of 26 U.S.C. § 170(h)(4)(B)(i)(I), the 2008 underpayment was not "attributable to" a valuation misstatement. Instead, the deduction was disallowed on entirely separate grounds that are not related to valuation.

The penalty for a valuation misstatement "is most appropriately applied to instances where a taxpayer claims for an asset a value that the Commissioner determines is unduly high. The paradigmatic case is the inflated value claimed for a work of art in order to obtain a large deduction for a charitable donation." Gilman v. Comm'r of Internal Revenue, 933 F.2d 143, 150 (2d Cir. 1991). "The penalty is, in a nutshell, a fine to be paid when a taxpayer makes a relatively large error on his tax return and ends up paying less than she actually owes." Blum v. Comm'r of Internal Revenue, 737 F.3d 1303, 1316 (10th Cir. 2013).

But courts have also upheld the use of a valuation misstatement penalty when the taxpayer's claimed deduction was denied in its entirety because it lacked a foundation in fact or law. In contrast to the "paradigmatic case" where the taxpayer overstates the value of a deduction, in these instances, the taxpayer was deemed ineligible for an exemption, and was still subject to the valuation misstatement penalty. These applications of the penalty typically involve

the use of tax shelters or accounting schemes whereby businesses or individuals purposefully engaged in sham transactions solely for tax benefits.  See, e.g., United States v. Woods, 134 S. Ct. 557, 561-62 (2013); Gilman, 933 F.3d at 144-47.  Where such transactions have no legitimate business purpose or economic substance, the IRS has denied deductions in their entirety, and its imposition of a valuation misstatement penalty has been upheld.  See generally Woods, 134 S. Ct. at 561-62.

Woods resolved a circuit split on the issue.  In Woods, a partnership engaged in sham transactions by which the partners claimed a high outside basis in the partnership, thus facilitating deductions for significant losses.  Id. at 560-61.  The IRS concluded that the partnerships were formed "solely for purposes of tax avoidance" and disallowed the deductions.  Id. at 561.  The IRS also imposed a 40-percent penalty for gross valuation misstatements.  Id. at 562.

As noted, a valuation misstatement occurs when "the value of any property (or the adjusted basis of any property) claimed" exceeds "the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be) . . . ."  26 U.S.C. § 6662(e)(1)(A).  In Woods, the taxpayer argued that because the partnerships themselves were deemed to be shams, the underpayment of taxes could not be "attributable" to a valuation misstatement.  134 S. Ct. at 567-68.  The Supreme Court disagreed, and concluded that because the existence of the sham tax shelters was intertwined with inaccurate claims of high basis and their attendant deductions, a valuation misstatement of basis was inherently part of the sham.  Id. at 566-68.  The Supreme Court also stated "that the valuation-misstatement penalty encompasses legal as well as factual misstatements of adjusted basis . . . ."  Id. at 567.

Woods has since been cited for the principle that the IRS may impose a gross valuation misstatement penalty even where the taxpayer's deduction is based on a sham transaction that lacked economic substance, and was entered into solely for tax avoidance reasons. Blum, 737 F.3d at 1317 ("Invalidation of a transaction under the economic substance doctrine does not prohibit the imposition of the gross valuation misstatement penalty."); see also Chemtech Royalty Assocs., L.P. v. United States, 766 F.3d 453, 465 (5th Cir. 2014) (valuation misstatement penalties may be imposed "when an entire transaction had been disregarded (here under the economic substance doctrine).").[1]

In support of its motion, plaintiffs rely on a pre-Woods line of authority, which held that a valuation misstatement penalty could not be imposed where an underlying deduction was disallowed in its entirety on grounds other than a valuation misstatement. See Todd v. Comm'r of Internal Revenue, 862 F.2d 540 (5th Cir. 1988) (relying on statutory history to conclude that a since-repealed statute similar to section 6662 did not provide for a valuation misstatement penalty if the entirety of a deduction was disallowed on other grounds); Gainer v. Comm'r of Internal Revenue, 893 F.2d 225 (9th Cir. 1990) (same). As Woods noted, other courts were in "'near-unanimous opposition'" to that minority interpretation. 134 S. Ct. at 562 (quoting Bemont Investments, L.L.C. v. United States, 679 F.3d 339, 354 (5th Cir. 2012) (Prado, C.J., concurring)). The Second Circuit has long rejected such an approach, see Irom v. Comm'r

---

[1] Without citing to Woods, the Tax Court has similarly concluded that "if a taxpayer claims a deduction that overstates by 200% . . . value or basis of property, any underpayment resulting from the disallowance of that deduction on grounds unrelated to valuation is nonetheless 'attributable to' the valuation misstatement, within the meaning of section 6662(b)(3) and (h)(1), to the extent that the underpayment relates to the disallowance of that portion of the deduction that exceeds the property's correct value or basis." RERI Holdings I, LLC v. Comm'r of Internal Revenue, 2017 WL 2839773, at *11 (T.C. July 3, 2017)

of Internal Revenue, 866 F.2d 545, 547 (2d Cir. 1989), and Woods expressly abrogated it, see Chemtech, 766 F.3d at 465. This Court declines to follow Todd and its progeny.

Plaintiffs also argue that the present case is distinguishable because in Woods, the valuation misstatements relating to partnership basis were intertwined with the underlying, sham transactions. According to plaintiffs, this case is different because the disallowed charitable deduction of $4,186,000 was not intertwined with a valuation misstatement of that same amount.

But the language of section 6662(b) and Second Circuit authority do not preclude the penalty's application when a deduction is also disallowed on other, separate grounds. Woods concluded that "the statutory text [of section 6662(b)] is unambiguous." 134 S. Ct. at 567 n. 5. Section 6662(b) states that the underpayment penalties "shall apply to the portion of any underpayment which <u>is attributable to</u> 1 or more of the following," including valuation misstatements. 26 U.S.C. § 6662(b) (emphasis added). In interpreting a similar, since-repealed penalty statute, the Second Circuit observed that "[t]he ordinary, dictionary meaning of 'attributable' is 'capable of being attributed.'" Irom, 866 F.2d at 547 (quoting Webster's Third New Int'l Dictionary 141 (1976 ed.)).

The government urges that the plain language of section 6662 provides for a valuation misstatement penalty if Partita's underpayment "is attributable to" – meaning "capable of being attributed" to – a valuation misstatement, even if this Court has, to date, only adjudicated Partita's entitlement to the deduction under section 170(h). The government observes that the term "is attributable to" does not mean "was attributed to," and that section 6662 contemplates that there may be more than one reason for a taxpayer's underpayment.

The Second Circuit's decision in Irom supports such an application of section 6662(b). In Irom, the Tax Court disallowed at summary judgment the taxpayer's loss deduction

for certain advance royalty payments as contrary to statute. 866 F.2d at 546. The IRS also asserted that the deductions were not permitted on the separate grounds that the taxpayer engaged in "tax-motivated transactions," which provided for penalties. Id. But the IRS did not raise that latter issue at summary judgment, and because the issue had not been adjudicated, the Tax Court concluded that penalties could not be assessed. Id. The Second Circuit disagreed, and concluded that because the penalty applied to underpayments "attributable" to tax-motivated transactions, the Tax Court should have separately considered whether underpayment was "capable of being attributed to" tax-motivated transactions for the purpose of establishing the penalty. Id. at 547.

Though it involved a different penalty statute, Irom's interpretation of the word "attributable" is persuasive. As in Irom, the government has successfully moved at summary judgment to disallow Partita's deduction in its entirety, but has asserted that penalties should be imposed on separate grounds, including valuation misstatement. The government's successful motion for summary judgment as to the deduction's disallowance does not preclude it from continuing to litigate Partita's challenge to the underpayment penalties, which will be decided at trial.

Plaintiffs' motion for partial summary judgment as to the valuation misstatement penalties is denied.

II. Plaintiffs' Summary Judgment Motion Directed to the Issue of Written Approvals for Penalties Is Denied.

Plaintiffs separately argue that summary judgment should be granted in their favor as to the 20 percent accuracy penalties because the IRS has not shown that the penalties were approved in writing, as required by statute. Under 26 U.S.C. § 6751(b)(1), "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally

- 10 -

approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."[2]

While this motion was sub judice, the Second Circuit construed the written-approval requirement in Chai v. Commissioner of Internal Revenue, 851 F.3d 190, 215-23 (2d Cir. 2017), a decision that the parties have discussed in supplemental letter-briefs (Docket # 86-87). Chai concluded that the statutory text of section 6751(b)(1) was ambiguous because it "contains no express requirement that the written approval be obtained at any particular time prior to assessment." Id. at 218.[3] Relying on the legislative history contained in a report of the Senate Finance Committee, Chai observed that the written approval requirement of section 6751 "was meant to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle." Id. at 219. That goal "strongly rebuts" the argument "that written approval may be accomplished at any time prior to, even if just before, assessment." Id. Chai concluded that section 6751(b)(1) "requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty." Id. at 221. It also concluded that written approval consistent with section 6751(b)(1) is "part of the IRS's prima facie penalty case." Id. at 221-22.

In opposing summary judgment, the government points to evidence that the 20 percent penalties were "personally approved (in writing)" by an immediate supervisor, prior to the date that the IRS issued a notice of deficiency. As noted, the IRS issued the FPAA on

---

[2] Plaintiffs do not dispute the existence of written approval for the 40 percent gross valuation misstatement penalty. (Docket # 67 at 2 ("During the course of discovery, Defendant produced a document that demonstrates that the Internal Revenue Service did comply with section 6751(b)(1) with respect to the proposed 40% penalty for gross valuation misstatement, and Plaintiff no longer contends that Defendant has failed to comply with section 6751(b)(1) with respect to the penalty.").)

[3] Chai noted that "assessment" is the formal recording of a taxpayer's tax liability – "essentially a bookkeeping notation" – and the final step before collecting a deficiency. 851 F.3d at 218. "In light of the historical meaning of 'assessment,' we agree . . . that the phrase 'initial determination of such assessment' is ambiguous." Id.

November 10, 2014. (Pl. 56.1 ¶ 4; Def. 56.1 Resp. ¶ 4; Def. Proposed Findings Ex. B.) The FPAA announced a gross valuation misstatement penalty of 40 percent, or, alternatively, 20 percent penalties for negligence or disregard of rules or regulation, substantial understatement of income tax or a substantial valuation misstatement. (Def. Proposed Findings Ex. B.) The FPAA is signed by Mark C. Pettigrew, who is identified with the title "Supervisory Appeals Officer." (Def. Proposed Findings Ex. B at 4.) The government also points to two earlier signed, written approvals of those penalties: a "Reviewers Report" of March 13, 2013 and an "Appeals Transmittal and Case Memo" of July 25, 2014. (Docket # 86; Docket # 71-1 ¶¶ 2-4; Levine Dec. Exs. C, D.) Both documents recommend the imposition of penalties, and appear to have been signed by their authors' respective supervisors. (Docket # 71-1 ¶¶ 2-4.) Plaintiffs argue that the Reviewers Report is not a definitive approval of the penalties and merely suggests that they be applied, but to the extent that plaintiffs argue that written approval was required in advance of the so-called "60 Day Letter" of May 20, 2013, the Reviewers Report of March 13, 2013 is some evidence that a supervisor personally approved the penalties in writing before the 60 Day Letter was issued. The effect of these purported approvals will be decided at trial.

Plaintiffs' motion for partial summary judgment as to the 20 percent penalties is therefore denied.

CONCLUSION.

Plaintiffs' motion for partial summary judgment is denied. (Docket # 73.) The Clerk is directed to terminate the motion.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
July 10, 2017